## CHASE *vs.* BLODGETT.

A conviction of a crime, in another state, is not admissible in evidence for the purpose of impeaching the credit of a witness.

But a conviction, in another state, of a crime which by the laws of that state disqualifies the party from being heard as a witness, and which, if committed here, would have operated as a disqualification, is sufficient to exclude him from testifying here, in the same manner as if it had been committed and the conviction had taken place in this jurisdiction.

ASSUMPSIT. On the trial the plaintiff offered one Doyle as a witness, to whose admission the defendant objected, on the ground that he had been twice convicted of infamous offences, in the supreme judicial court of Massachusetts.

The plaintiff contended that the objection went only to the credit of the witness, and the defendant that it went to the competency. The court ruled that the witness was admissible, to which the defendant excepted.

*Farley,* for the plaintiff.

*C. H. Atherton,* for the defendant.

PARKER, C. J. The ruling in this case undoubtedly has very respectable authority to sustain it. The admissibility of a conviction, in another government, to exclude a witness from testifying, was discussed very much at large in *The Commonwealth* vs. *Green,* 17 *Mass. R.* 515, in which the court came to the conclusion that a conviction, of an infamous crime, in a foreign government, and even in another of the United States, was not sufficient to exclude the witness. It does not seem to have been settled, in that case, that it could be admitted to affect his credibility ; but some intimations that such might be its effect are contained in the opinion ; and in a subsequent case, *The Commonwealth* vs. *Knapp,* 9 *Pick. R.* 512, a record of conviction, in another state, was held clearly admissible to affect the witness's credibility.

Chase *v.* Blodgett.

It is always with great reluctance when we differ from the learned tribunal whose opinions have just been cited; but our investigations, in this case, have not led us to a similar conclusion. Aside from these cases, we are not aware of any decision which will justify the introduction of such evidence for the purpose of impeaching the credibility of a witness. Mr. Phillips, in his treatise on Evidence, speaking of the effect of a pardon, says, " it is said to make the witness a new creature, and gives him a new capacity : the crime, indeed, may still be objected against him as affecting his credit, but cannot be urged against his competency as a witness." 1 *Phil. Ev.* 27, [29.] No authority is cited for that part of the paragraph relating to the credit of the witness ; but, in the sense in which the matter was probably intended, there is, perhaps, no reason to deny the correctness of the position. The author is not, in that place, treating of the purpose for which a record of the conviction of the witness, for an infamous crime, may be offered. He had before stated, that it might be offered to show that he was incompetent to testify, and is there considering the restoration of his competency. This is effected by a pardon ; but the pardon does not prevent the other party from offering the record of the conviction, for the purpose of excluding the witness. It is produced in answer to that evidence, and obviates its effect, so far as to admit the witness to testify ; but the record of the conviction having lawfully came into the case, under the attempt to exclude him, if it was read in the hearing of the jury might naturally be expected to have some effect upon the character of the witness, and may, perhaps, without any violation of rules, form a subject of comment in that view. This, however, is not clear, as the evidence of the conviction, when offered to exclude, is addressed to the court, and not to the jury. It is not unusual that matters come into a case calculated to affect the credit of a particular witness, and which are urged upon the attention of the court and jury for that purpose, but which could not have been offered, standing alone, as substantive testimony to impeach his character.

Chase *v.* Blodgett.

That the record of a conviction cannot be offered with the avowed purpose of impeaching the credit of a witness, where the conviction was within the same government, seems to be evident. So far as our examination has extended, no elementary writer, in treating of the effect of such conviction and the admissibility of the record, has suggested that the party, against whom the witness is produced, has an election to treat the conviction as a ground of exclusion, or as an impeachment of the credit of the witness ; nor has any case been found which sustains such a position. On the contrary, the conviction, with the exception of the cases in Massachusetts, where the convictions were in other states, has been treated as an objection to the competency of the witness alone. The record of the conviction is to be offered before the witness is heard.

The record of the conviction is but evidence of the commission of a particular crime ; and the authorities are express, that the character of a witness for truth can be impeached by general evidence only, and not by evidence as to particular facts. 3 *Stark. Ev.* 1753 ; 1 *Ditto* 146 ; *Holt's N. P. C.* 541, *Sharp* vs. *Scoging ;* 1 *Phil. Ev.* 212, [229] ; *Com. Dig., Test. A.* 4.

The record furnishes evidence, of the highest nature, of the fact that the witness committed the crime ; but it is no more than conclusive evidence, as to particular facts, and seems, therefore, to come within the principle just stated.

The credit of a witness may be impeached by his cross examination ; or by evidence of his general bad character ; or by testimony that he has said or done that which is inconsistent with his evidence on the trial ; or by contrary evidence as to the facts to which he testifies. 1 *Stark. Ev.* 145 ; 1 *Phil. Ev.* 212, [230.] Such seems to be the rule as stated by the text writers, and established by the cases ; but this certainly does not recognize the admission of his conviction as one means of attacking his credibility.

It is perfectly clear, that any evidence to show that the

Chase *v.* Blodgett.

witness had committed a crime, unless it be that of a record of conviction, is inadmissible to affect his credit. The witness cannot be compelled to disclose, either that he has been guilty of a crime, or has been convicted of the perpetration of one ; nor can witnesses be offered to establish such a fact. 1 *Phil. Ev.* 205, [222] ; 1 *Stark. Ev.* 137, 138, *and note* 1.

A party may object to a witness, that he disbelieves the existence of a Supreme Being, for the purpose of excluding the witness from testifying ; but no authority has been found which shows that he may waive his right to offer the proof in exclusion of the witness, and afterwards prove that ' particular fact' to impeach his credibility. He may forego his right to exclude, if he pleases ; but if he does not object to the witness when he might have excluded him, he voluntarily admits him as worthy of being heard ; and ought not to be permitted to attack his character by proof of a particular fact, affecting the witness, but having of itself no connexion with the cause.

If the evidence of a particular fact, affecting the general character of the witness, was to be admitted to impeach his credit, the particular circumstances under which that fact happened, ought, in justice to the witness, to be enquired into, in order to the formation of a judgment how far it should detract from his testimony ; and so, if a judgment of conviction was admitted, to affect his credit merely, it should affect it more or less, according to the circumstances under which the crime was committed ; and the party offering the witness ought to be permitted to give evidence of those circumstances.

It is from these considerations that we have come to the conclusion, that a domestic judgment against the witness could not be used as evidence to the jury, for the purpose of establishing the particular fact that he had committed the crime, and thereby impeaching his general credit. And there is nothing in the cases cited from Massachusetts to indicate that, thus far, there is any different opinion entertained there.

Evidence of the conviction of a witness, when offered for the purpose of excluding his testimony, is, as has been before suggested, addressed to the court. If it may be offered to affect the credit of the witness, its nature will be changed, as it will thus become evidence to the jury.

Upon what ground, then, is a judgment of another state, if it be admissible at all, to be admitted for this half way purpose? We obtain no answer to this question from the cases which have been cited. In The Commonwealth *vs.* Knapp, in which it was so held, no grounds for the opinion are reported. It is not, certainly, because it is permitted to have no greater effect in the state where it was rendered. There its effect would be exclusion. Nor can it be because a crime committed in another state is somewhat less infamous than a like crime committed in our own, and should therefore not entirely exclude the witness, but only affect his credibility. The declared disbelief of the existence of the Deity would not be reduced down to evidence affecting only the credit of the witness, because the declaration of unbelief was made within another jurisdiction. Nor can it be because the judicial proceedings in another state, although proper to be offered in evidence, are to have a little less weight than those of our own. If the judgment is to have any effect, it would seem that, when proved, it should be entitled, *prima facie* at least, to the same effect as it would have if offered in evidence in the jurisdiction where it was rendered. Such is the case with foreign judgments, brought here for the purpose of being enforced by means of a new action; although in such case they have not the same conclusive character, and the *prima facie* operation may be rebutted, and the effect defeated by other evidence.

We have been unable to discover any satisfactory reason for a distinction between convictions in our own state, and like convictions in other of the United States, if the latter are to be admitted in evidence against the witness. If the

Chase *v.* Blodgett.

conviction is not deemed sufficient to establish the infamy of the witness, and thus prevent his being heard, in accordance with the general rule admitting such evidence, there seems to us to be no substantial ground for making it an exception to the other general rule, that particular facts, having no connexion with the cause, are not to be given in evidence for the mere purpose of affecting the character of the witness, and thus impeaching his credit.

The remaining question is, whether the evidence of the conviction ought to have been admitted to exclude the witness from testifying, or whether it ought to have been rejected entirely.

The case does not state the precise nature of the crimes of which the witness had been convicted in Massachusetts. It states them to have been infamous offences, by which it is understood that they were such offences as are deemed infamous in Massachusetts, and in this state also; for there has been no suggestion that the offences were not such as would have excluded the witness, had the record of conviction been in our own courts.

It is not necessary, therefore, to consider what might be the effect of a record of another state, showing a conviction of a crime varying somewhat from any offence known to our code, but deemed infamous in the government where the conviction was had. Nor are we called upon to determine, in this case, what would be the effect of a conviction in a foreign country, especially in one where the common law was not known; nor whether sufficient evidence of a conviction, in a foreign country, can be offered here.

The conviction in this case was in another of the United States; and although such state is to be regarded as foreign, for some purposes, it is not foreign so far as the proof of its judicial proceedings is concerned. The constitution of the United States provides, that full faith and credit shall be given, in each state, to the public acts, records and judicial proceedings of every other state; and that congress may by general

laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof. The act of congress of May 26, 1790, prescribes the manner of proof. But we are not disposed to place our decision upon the ground, that by force of these provisions the record of the conviction must exclude the witness here, because it would have that effect in Massachusetts. If it be admitted that the constitutional provision relates to the credit and effect which the judicial proceedings of one state are to have in another, when offered as the foundation of an action, or as a justification for acts done, or as evidence of rights existing—still, as those proceedings may, by the laws of the United States, be so authenticated as to be here conclusive evidence of the rendition of the judgment, and of the matter upon which it is founded—the enquiry remains, whether a conviction in another of the United States, of a crime infamous by the laws of that state, and equally so by the laws of this state, should not operate to exclude the criminal from being heard as a witness here, in the same manner as it would have done if the conviction had taken place in this state.

The principal argument, in The Commonwealth *vs.* Green, against admitting the record, to exclude the witness, is, that " a disparagement of character, and incompetency to testify, are part of the punishment of crime, either at common law or by statute ;" and that to hold a person incompetent, on account of such conviction, is to give effect to it, and to enforce the punishment ; by which means the penal laws of one country would reach into others. " If the penalty," it is said, " do not extend beyond the jurisdiction against which the crime was committed, then incompetency, which is the effect and consequence of crime, and part of the penalty, cannot reach beyond the limits of the state whose laws have been violated." 17 *Mass. R.* 548.

If this is a correct exposition of the matter, the question might well be asked, whether the admission of the record, in disparagement of the character of the witness, and for the

Chase *v.* Blodgett.

purpose of affecting his credibility, is not enforcing a part of the punishment; and thus carrying into effect, to some extent, the penal laws of another country. Regarded in that light, the disparagement of character would be only a less punishment than exclusion on account of infamy of character.

But the enquiry arises, at once, whether the rejection of a witness, because he has been convicted of an infamous crime, is, in truth, any part of the punishment of the crime. The punishment of the crime is prescribed by the law, and is inflicted in pursuance of the sentence. The judgment of the law, as made up in the record of the sentence, shows the penalty and punishment. But incapacity as a witness, where the incapacity results from the common law, forms no part of the sentence. It is not a penalty prescribed for the punishment of the crime, and is not adverted to in the judgment, or found in the record. A rejection, when offered as a witness, may, it is very true, cause greater mental suffering to the party than all the punishment denounced in the statute, or ordered in the judgment; but this suffering is incidental. It is not inflicted as the judgment of the court in which the conviction was had, or of that which rejects the witness. The witness is excluded, not to punish him for the crime he has committed, but because, by the commission of it, he has shown himself a person unfit to be trusted to give testimony affecting the rights of others, (2 Stark. Ev. 714); and the exclusion, it seems to us, is no more to be regarded as a punishment of the individual, than the exclusion of a person on account of his disbelief in the existence of a Supreme Being is to be regarded as a punishment of his atheism. The rejection is for the protection of the rights of the party against whom he is called to testify.

On this view, if faith and credit is given to the matter appearing by the judgment, and it is there shown that the witness has been convicted, in another state, of a crime infamous by the laws of that state, and one which, if committed

here, would have excluded him from testifying ; it may well be asked—How much more fit is he to be heard, than he would have been had the conviction been in our own courts? How much greater is the probability that his statements will bear the impress of truth ? How much safer are the rights of the party?

It is suggested, in The Commonwealth *vs.* Green, that the clause in the constitution must have intended such judgments as could, by the aid of courts of other states, be carried into execution and effect ; and that it has no relation to criminal proceedings. It is perhaps unimportant to the settlement of this case ; but we are of opinion that this would be too narrow a construction. It was doubtless not intended to require the courts of one state to enforce the sentences of those of another against criminals. The punishment of crime is to be inflicted in the jurisdiction in which it is committed; and the judgment of a court of one state, against an offender, cannot have such faith and credit as to form the basis of a new indictment, in another state, or of an order for carrying the judgment into effect there. But the criminal proceedings in one state may, in many instances, form the only justification for acts which would otherwise be trespasses of an aggravated character ; and when so offered, in the courts of another state, they are entitled to as much faith and credit, and are as much within the constitution and the act of congress, as any other judicial proceedings. And so of any other cases where such proceedings may lawfully be offered in evidence in a foreign government, or another state. There is nothing in the terms of the constitution, or law, to lead us to a different conclusion.

Another argument against the admission of the conviction, to exclude the witness, urged in the case before alluded to, is, that where there is a crime, or punishment, remaining in force, there should be a power of pardon. There are, undoubtedly, cases where the individual who has been convicted of an infamous crime, gives evidence, by an exemplary

Chase *v.* Blodgett.

life, of penitence and reformation ; and there may be cases in which the testimony of such an individual may be of great importance to some party, in a court of justice. But the power of pardon exists in the government where the crime was committed, and the evidence of reformation can be offered to the executive there, in all such cases, and the individual be restored to his competency. It may not be quite so convenient to procure a pardon, as if he had remained within the jurisdiction where the judgment was rendered; but there should be no well founded apprehension, in such case, of a refusal, because the party had removed from the state. On the other hand, if a party, thus convicted, may relieve himself from the disability, by emigration to another state, he has an encouragement to change his domicil, although he may not have a disposition to change his habits.

It is unnecessary to pursue this discussion farther. For the reasons already indicated, we are of opinion that a conviction in another state, of a crime which by the laws of that state disqualifies the party from being heard as a witness, and which if committed here would have operated as a disqualification, is sufficient to exclude him from testifying here, in the same manner as if it had been committed, and the conviction had taken place, in this jurisdiction. We go no farther than that at the present time ; leaving cases which do not come within this principle for future consideration. 2 *Metcalf's Starkie* 716, *note* 2 ; 17 *Mass. R.* 528, 543 ; 2 *Har. & McHen. R.* 380, *Clark's Lessee* vs. *Hall.*