## CLEMENT & a. *vs.* BROOKS & a.

The wife of one of the tenants in a real action, hearing that his property was about to be attached, went in his absence to the other tenant, to whom he had previously conveyed the premises; and, on her husband's return, told him where she had been, and that she had got the cows partly secured, but that the other tenant advised her to let things remain as they were, until her husband's return, upon which her husband said that he had mortgaged the cows to Hutchins;—*Held*, that the wife's statements were merely introductory to what was said by her husband, and that the evidence did not tend to show that the conveyance was fraudulent as to creditors, on the part of either of the tenants, and was immaterial.

A verdict will not be set aside on account of the introduction of immaterial evidence.

It is not an objection to a deposition, that the notice to the defendant, of the caption, is signed by the plaintiff as a justice of the peace.

Upon the cross-examination of a witness, it is improper to ask him, and he need not answer, whether he has been a convict in a state prison; as the record of his conviction is the best evidence, and should be produced, if the party desire to prove the fact.

Whether, upon cross-examination, the question be proper or not, on the ground that the matter is collateral, and the answer intended only to impair the credibility of the witness, by degrading his character, *quære?*

WRIT OF ENTRY, to recover a tract of land in Landaff, in this county.

Clement *v.* Brooks.

At the trial upon the general issue, the demandants proved that they had caused an execution in their favor against Levi Brooks, one of the tenants, to be extended upon the premises, as his property.

The tenants proved that, before the extent of the execution, Levi Brooks conveyed the premises to Timothy Brooks, the other tenant, and a question was made whether the deed were fraudulent as to the creditors of Levi Brooks.

There was evidence on the part of the demandants that, in the absence of Levi Brooks, his wife, receiving information that his creditors intended to attach his property, went to the house of Timothy Brooks, and that soon after her return her husband came home.

The demandants then proved, by Wait Brown, that on Levi's return his wife informed him that she had been to Timothy Brooks, and had got the cows partly secured, and that Timothy advised her to let things remain as they were until her husband's return. Levi then told her that he had mortgaged the cows to Hutchins. To this evidence the tenants objected, but it was admitted by the court.

The demandants offered the deposition of Chellis Goodwin, to which the tenants objected, because the notice of the caption was signed by Ira Goodall, esquire, one of the demandants, as a justice of the peace, and who, as the tenants alleged, was therefore incompetent to act as a magistrate, for any purpose in this case ; but the objection was overruled.

On the cross-examination, by the counsel for the tenants of the aforesaid Wait Brown, he was asked if he had ever lived at Auburn, in the state of New-York, in a house belonging to the state ; and if so, what was his employment there, and when he was hired ? The witness declined to answer the questions. The court ruled that as the object of the inquiries was, and was admitted to be, to ascertain from the witness whether he had been a convict in the New-York state prison, under color of asking him about his place

Clement v. Brooks.

of residence, and this being a collateral matter, not pertinent to the merits of the case, and intended to impair the credit of the witness, the inquiries were improper to ·be put, and need not be answered. To this ruling the tenants excepted.

The jury returned a verdict for the demandants, which the tenants moved to set aside, on account of the rulings of the court as aforesaid.

*Bellows*, for the tenants. The acts of Mrs. Brooks were not competent to be proved, unless she were the agent of her husband ; and she had no power to charge him, unless she had some authority for that purpose ; which cannot be presumed, but must be proved. The fact that she had been to Timothy Brooks, even if proved by sufficient evidence, was incompetent. 6 *East* 196 ; 4 *Camp.* 92 ; 2 *Str.* 194. Her declarations that she had done certain things, did not prove that she had done them. 1 *Shep.* 386.

Her statements, made in presence of her husband, and not denied by him, are not, therefore, to be considered as admitted by him, for she had no means of knowing whether her statements were correct or not ; and as the opposite party was not present, his mere omission to deny her statements amounts to nothing. 3 *C. & P.* 103 ; *Ibid.* 193. And we maintain that his silence amounted only to saying that he knew nothing about it.

The notice of the caption, signed by one of the demandants, was insufficient. *Com. Dig., Justice,* (*I,* 3.) ; 1 *Salk.* 607 ; *Pierce* vs. *Atwood,* 13 *Mass.* 324.

As to the inquiries made of Brown, whether he were bound to answer or not, the questions were proper. We desired to ascertain the degree of credit which should be given him. The answer to the questions could not criminate him, nor expose him to any penalty, nor to any pecuniary loss even. We desired to prove what had been his associates and habits of life, the result of his voluntary acts. The answer might have affected his credit, but could not have excluded him,

Clement *v.* Brooks.

nor was the question put with that view. The questions were, therefore, proper ; and, as they were ruled to be improper, the jury did not, therefore, probably make that inference from his refusal to answer, which ought to have been made if the ruling had been different.

*Goodall*, for the demandants. We think that as the husband did not object to what his wife said she had done, he should be bound by his silence. She told him what she had done, and he made no objection. If he had any objection, he would naturally have stated it. It is immaterial whether he had any means of knowledge or not. He had no reason to disbelieve her. 21 *Pick.* 522 ; 8 *Greenl.* 58 ; 6 *N. H. Rep.* 124.

As the party may summon witnesses, and may serve the notice himself, there seems no reason why he may not sign the notice of a caption, which is not a judicial, but as merely ministerial an act as can be imagined.

Gilchrist, J. Levi Brooks has no title to the demanded premises against the demandants ; and if the action were against him alone, the demandants would be entitled to judgment against him. But the action is against Timothy Brooks also ; and if he should maintain his defence, the demandants could not have judgment against either, because they could not have any possession. *George* vs. *Sargent,* 12 *N. H. Rep.* 313.

It then becomes material to inquire, whether the conveyance from Levi to Timothy were fraudulent as to the demandants, who were creditors of Levi. Now, there is no doubt that the demandants might have offered evidence of other transactions and declarations of Levi Brooks, showing a fraudulent purpose. *Whittier* vs. *Varney,* 10 *N. H. Rep.* 290. But is this fraudulent purpose shown by what was said, or omitted to be said, at the interview between him and his wife ? The statements of Mrs. Brooks, of themselves, are

not evidence. They derive their importance and admissibility only from the fact that they were introductory to his declarations, and explanatory of them ; and, considered in this light, they are not exceptionable. *Davis* vs. *Sanders*, 11 *N. H. Rep.* 259.

But how far are her statements material ? It appears that she heard that her husband's creditors were about to attach his property—that she told him she had been to Timothy Brooks, and had got the cows partly secured. In what way, for what purpose, and to whom the security was made, does not appear. It might have been to secure an existing creditor ; and that, if intended merely as a preference of a creditor, would not have been fraudulent, although the debtor might have been insolvent. But if it had been submitted to the jury, as evidence of a fraudulent purpose by Timothy Brooks and that he aided Levi in delaying his creditors, it would have been exceptionable, as hearsay evidence. Her mere declarations of what she had done, without any evidence of her husband's privity, would be incompetent to affect the title of Timothy. But she added that Timothy advised her to permit things to remain as they were, until her husband's return. This certainly rebuts any presumption of fraud on his part.

We come now to what was said by Levi—the only evidence which, of itself, has any validity ; all which precedes it being merely inducement.

But it is here argued, that Levi Brooks should have dissented from, or objected in some way, to what his wife said she had done ;—that as he did not, he must be considered as assenting to it, and that such omission must be considered as indicating a fraudulent intent on his part. It is not necessary that the demandants should take this position, in order to defend their verdict ; if it were, the verdict would be indefensible. The information was not of a character that called for any commentary, because the securing the cows, which Mrs. Brooks went to Timothy to accomplish, her

husband had himself effected. As the object was attained, it would have been superfluous to criticise what his wife did, in endeavoring to effect the same purpose.

What, then, did he say ? Merely that he had mortgaged the cows to Hutchins. This is all that the evidence offered to prove fraud results in. What connection has it with any transactions between Levi and Timothy, with the alleged fraudulent purpose, with the deed of the land ? If it will prove fraud here, it will prove it in any other case in which these parties are concerned ; it will be adapted to any state of facts, any combination of circumstances, that may be imagined. And we think the only view that can be properly taken of this evidence is, that it is entirely immaterial, and, as such, furnishes no ground for setting aside the verdict. *Jewett* vs. *Stevens,* 6 *N. H. Rep.* 80 ; *Hamblett* vs. *Hamblett, Ibid.* 333.

It is objected, that the deposition of Chellis Goodwin was not competent evidence for the demandants, because the notice of the caption was signed by Mr. Goodall, one of the demandants, acting as a justice of the peace. If this were a judicial act, the objection must be sustained ; for it is alike inconsistent with the spirit of the constitution, and with the decisions of this court, that a party should act judicially in his own case. *Constitution, Judiciary Power, clause* 7 ; *Bean* vs. *Quimby,* 5 *N. H. Rep.* 94 ; *Whicher* vs. *Whicher,* 11 *N. H. Rep.* 348. But this was not a judicial act. It was merely a notice to the party of the time and place when a judicial act would be done by another person. The statute requires that the notice should be verified in a certain manner, by the signature of a justice, in order to give it authenticity, and to satisfy the party, by this formality, that the depositions are really intended to be taken. It is difficult to perceive why this signature should lose any of that validity which is necessary in order that it should answer its purpose, by the fact that the magistrate is a party in the cause. He is nevertheless a magistrate ; and this, like his other acts, is

done under the obligations of his official oath. Whenever objections of this kind are made, the question always must arise, whether the act be of a judicial or ministerial character. The signature of the notice in this case is certainly as little liable to objection, as was the act of the creditor in *Atherton* vs. *Jones*, reported in a note to *Porter* vs. *Bean*, 1 *N. H. Rep.* 362. In that case, the creditor administered the oath to the appraisers upon the extent of an execution ; and it was held to be merely ministerial, and, as such, sufficient, and not affecting the levy. We see no difference in principle between the two cases, and are satisfied with that decision, and think the exception cannot be sustained.

Upon the question, how far a witness is bound to answer questions tending to degrade himself, the decisions are numerous and contradictory. This is particularly the case upon that branch of the question which relates to the obligation of the witness to answer questions merely relating to his moral character and conduct. And there appear to be contrary decisions upon the question now raised, considered as a matter tending to degrade the witness. The cases are collected in 1 *Phill. on Evidence* 279, and in note 522, by Cowen and Hill. But it is said incidentally by the court, in *Chase* vs. *Blodgett*, 10 *N. H. Rep.* 25, that the witness cannot be compelled to disclose either that he has been guilty of a crime, or has been convicted of the perpetration of one ; and it is the opinion of Professor Greenleaf, *Greenl. on Evidence*, *sect.* 457, that where the question involves the fact of a previous conviction, it ought not to be asked, because there is higher and better evidence which ought to be offered. This result is sustained by the authorities to which the learned author refers in the notes. And where the object is, as was indicated by the nature of the questions put in the present case, to ascertain the fact of the conviction and the guilt of the witness, the record should be produced, as the best evidence ; and it seems analogous to an attempt to prove the execution of a deed to which there are subscribing witnesses

by the admissions of the grantor, which is not permitted, as there is better evidence from the testimony of those witnesses.

As to the point, whether the questions were improper—relating to a collateral matter, not involved in the issue, and being asked under the latitude allowed in cross-examination, and intended to impair the credit of the witness by answers degrading to his character, which seems to have been one ground in the minds of the court for excluding the evidence ; we are inclined to leave it, as, perhaps, even now to some extent, a *quæstio vexata,* to some future case when its decision may be necessary. It is sufficient for this case, that the fact of the conviction was not susceptible of such proof. The witness was not bound to answer the inquiries.

We have not remarked upon the form of the questions, because the veil thrown over the object, by the language used, was too transparent to obscure it to the eyes of any one, and the purpose was afterwards admitted. They amounted merely to an inquiry whether the witness had been a convict in the state prison in New-York.

The exception is overruled, and there must be

*Judgment on the verdict.*