### TOWN OF ROCHESTER *vs.* TOWN OF CHESTER.

A settlement may be acquired in a town by owning real estate therein of the value of $150 during four years, and a residence there during the same four years ; and such town is liable for the support of the person thus owning the estate, and residing as aforesaid, in case he is unable to support himself ; although he may not have been taxed for said estate.

The opinion of witnesses is not competent evidence, except on questions of science and trade, and others of the same kind.

THIS was an action of assumpsit for the support of *Elizabeth Smith*, a pauper, alleged to have her settlement in *Chester*.

The cause was tried here, September term, 1824, on the general issue, and a verdict found for the defendant.

The defence was, that the pauper had acquired a settlement in *Rochester*, by owning real estate in that town, and residing therein four years ; and the court instructed the jury, that if they believed, from the evidence, that the pauper had been the owner of real estate in *Rochester*, of the

value of $150, during four years, and had dwelt and had her home there the same four years, she so owned said estate, she thereby gained a settlement in *Rochester ;* although the estate was not taxed by that town during the said four years.

The plaintiffs, in order to prove the value of the estate, owned by the pauper, to be less than $150, offered the opinions of sundry witnesses, who were well acquainted with the estate, and who had examined it for the purpose of ascertaining its value, and with a view to purchase ; which evidence was rejected by the court as incompetent.

To the foregoing instruction of the court the plaintiffs excepted, and for that, and the rejection of said evidence, moved for a new trial.

*Barker,* for *Rochester.*

Towns or parishes are not obliged by the common law to afford relief to the poor. Whatever legal rights or obligations exist, in relation to this subject, they are created, and are to be defined and ascertained, by statutes. In settling the construction of the statutes, it is presumed, the inquiry will be, what is the reasonable meaning of the language used ? or, if it be doubtful, whether any, and what adequate reasons can be assigned to develope the meaning intended to be expressed ? Whether the rule then established be the most useful or politic, at the present day, or in the present state of society, is not the question. The whole system of the poor laws may be radically wrong. But good or evil, it now remains only to execute the law, agreeably to the reasonable intention of the makers, if it can be discovered.

The defendants say, that the pauper, *Mrs. Smith,* has gained a settlement in *Rochester,* by the 4th section of the statute of 1796. "Any person of twenty-one years of age, " and upwards, having real estate of the value of one hundred " and fifty dollars, or personal estate of the value of two " hundred and fifty dollars, in the town or district where he " dwells and has his home, and shall, for the term of four " years, pay all taxes, duly assessed on his poll and the es-

" tate aforesaid, shall thereby gain a settlement in such " town or district."

*Mrs. Smith* owned no personal property—was not taxed for her real estate in *Rochester*—and as no fraud upon the law was contemplated, none was committed, by this omission to tax her real estate ; we shall therefore contend, that by the 4th section of the settlement law, above recited, the pauper acquired no settlement in that town.

It is an admitted rule of construction, that where other statutes have been previously enacted, in relation to the same subject matter, they may be resorted to, with much propriety, in giving a construction to subsequent statutes.— With that view, we shall refer to the statutes in relation to settlements, which have been in force in this state, or were so in England, before the enactment of any laws, in this state, on that subject. The first provincial statute, passed in 4th Geo. I. and contained in the appendix to the N. H. laws, provides, that " no town shall be at the charge or sup- " port of any person residing therein, unless such person shall " have been approved by the town or selectmen, or shall " have resided in such town by the space of twelve months, " without being warned to depart therefrom." By the stat- ute of 5 Geo. I. the period of residence, by which an inhabit- ancy might be acquired, was reduced to " three months."— By statute 11 Geo. 3. the term of residence was extended to the period of " one year ;" but by neither of the statutes could a person gain a settlement, if warned to depart within the fixed period. These provincial statutes were repealed in 1792, and the settlement law, as it then stood, was sub- stantially incorporated in the statute of that year.

From the examination of these statutes, it is clearly to be inferred, that a settlement should be acquired in no instance without the assent of the town, either expressed or implied. It may also be fairly inferred, that the legislature, in passing the settlement law now in force, did not intend to contradict a plain characteristic of the previous statutes, unless that in- tention is distinctly signified. If, therefore, any of the pro-

visions of the law, of 1796, be doubtful, and nothing be expressed in the law itself, by which those doubts can be removed, it is but just, to urge the general intention of the previous statutes, as an argument, in determining its true construction. This consideration is founded in the constitution of the human mind. In its advances to improvement, each successive step refers to the preceding. No sudden revolution occurs in law or in morals, which is not exhibited in plain characters. It cannot be doubted, that the prominent feature of all the old statutes is, that no former settlement should be lost, or new one acquired, contrary to the wishes of the town, upon which the new burden is imposed. We shall endeavor to shew, that no such meaning, repugnant to former statutes, was intended, or is contained, in the law of 1796. That statute enumerates the various ways of obtaining original, or new settlements ; and, on comparing the English statutes, and judicial decisions thereon, with its provisions, there will be found an evident analogy between them, and a distinct relation of the latter to the former.

By the English law, " a woman marrying a husband, who " hath a known settlement, shall follow the husband's settle- " ment." 2 *vol. Burns' Jus. (8th Ed.)* 248. " A woman marry- " ing a husband, that hath no known settlement, doth not lose " her former settlement, which she had before marriage." *Ib. p.* 249.

By the first section of our statute, (*N. H. Laws p.* 362,) " a married woman shall have the settlement of her hus- " band, if he have any within this state, but if otherwise, " her own, if she had any at the time of marriage, shall not " be lost or suspended, by such marriage, unless she shall " have gained a legal settlement elsewhere.

By the English law, " legitimate children shall have the " settlement of the father, if he have any ; but if the father " have no settlement, as being a foreigner, or if the father's " settlement be not known ; yet, if the mother hath a settle- " ment, the children, in such case, shall be sent to the place " of the mother's settlement." 2 *Burns' Jus.* 214.

By the second section of our statute, " legitimate children " shall have the settlement of their father, if he shall have

" any within this state, until they gain a settlement of their " own ; but if he shall have none, they shall have the settle- " ment of their mother, if she shall have any."

By the English law, " illegitimate children are *prima facie* " settled where born, but if by collusion, or privity, a wo- " man be delivered of a bastard where she does not belong, " such bastard does not gain a settlement by birth." 2 *Burns* 210.

By the third section of our statute, the settlement of illegitimate children is otherwise regulated ; and we desire the court to mark the difference particularly. It is thus : " il- " legitimate children shall have the settlement of the moth- " er at the time of their birth, if she shall have any within " this state ; but neither legitimate or illegitimate children " shall gain a settlement by birth in any place where they " may be born, if neither of their parents shall then have a " settlement there."

The positive language, in which our statute dissents from the English law, cannot escape the attention of the court. The alteration is not conjectural, to be inferred by argument, but the English law is expressly contradicted in *totidem verbis.* Our statute first states a distinct proposition, viz. that " illegitimate children shall have the settlement of the " mother," a mode of acquiring a settlement different from the English law ; and secondly asserts, that " illegitimate children shall not gain a settlement by birth," the only mode in England, by which an illegitimate child can have an original settlement. We think, therefore, the argument entitled to much consideration, that if the legislature had intended, in other provisions of our statute, to dissent from the English law and English judicial decisions, in relation to the same subject matter, they would have expressed it in language equally positive and certain.

By the statute of *3d William*, " any person shall be ad- " judged to have a legal settlement by inhabiting in any town " or parish, and executing any public annual office or charge " in said town or parish one whole year." 2 *Burns' Jus.* 255.

By the fifth section of our statute, a settlement could be acquired by serving one year in either of the offices therein enumerated.   This section has since been in part repealed.

These are the only modes of acquiring new settlements, provided in our statutes, excepting those, by residence and taxation for poll and estate.   In this instance, too, there is a plain analogy between the English statute of *3d William*, and the 4th section of our statute of settlements, upon which this case depends.   " If any person, who shall come to in-" habit in any town, or parish, shall be charged with, and pay " his share towards the public taxes or levies of the said " town, or parish, he shall be adjudged to have a legal set-" tlement in the same."   2 *Burns' Jus.* 254.

The difference between our statute and that of *William 3d*, is scarcely perceptible, except in defining the amount of property, which the person must possess ; and one must examine the different statutes with much critical exactness to discern the variation in their phraseology.   A transposition of the words of our statute, without changing the sense, or meaning, assimilates it to the English, " shall be duly assess-" ed, (charged) and pay all taxes," and according to all rules of grammatical construction of language, the sense of the clause is not altered by the different collocation of the words. Is it reasonable to suppose, that the legislature designed to establish a different rule of law by a slight and apparently accidental alteration in the arrangement of words, which the learned, or unlearned, in the science of language, could not perceive to affect the meaning, and not even a lawyer, except by a course of refined and artificial reasoning ?   The general coincidence of language in the English, and Massachusetts statute, from which ours was probably copied, is not accidental.   Our whole settlement law is in strict accordance with the English statutes, and legal decisions, excepting that, which governs the settlement of illegitimates ; and in that the English law is repealed in direct terms.   Our settlement law is evidently drawn with particular precision, and conformably to received legal decisions.   The statute of *William 3d* had then obtained a settled construction.   Vari-

ous decisions, explanatory of it, had been made and published in the 8*th Ed. Burns' Jus.*, printed in 1762, thirty-two years before the passing of our statute, a book of established authority, at that time in the hands of every lawyer, and of almost every reputable magistrate.

In *Str. Rep.* 1022, *King vs. Bovington*, it is held, " that " *payment* to the poor doth not give a settlement, unless the " party was *rated*, for the *rating* is the act of the parish, and " not the other.　And the settlement ariseth from the par- " ish's giving that evidence of their being satisfied of his abil- " ity !"

Also, *Foley on the Poor Laws* 128,—" the landlord was ra- " ted to the poor for the tenement, and the tenant *paid* the " rate."　The court held, " the tenant doth not gain a set- " tlement, unless he be both *rated* and *pay*."　*Burns* remarks, " this kind of practice may be sometimes on purpose to avoid " a settlement ; but it lies in the power of the justices to " adjudge, whether or no it shall be deemed a fraud."

Also, *D. & E. Rep.* 2 *vol. p.* 628, pauper rented a house at £5 per ann.　Landlord informed the pauper, taxes were wanted ; the pauper desired the landlord to pay them, and would allow him therefor.　No taxes were demanded from or paid by the tenant, but the landlord paid, and was allowed therefor by the tenant.　The overseer knew nothing of the pauper.　By the court ; " no settlement was gained, for it is ex- " pressly stated, that the overseer knew nothing of the pau- " per, whether he resided at this farm.　*The reason why a* " *party gains a settlement is, because it is an admission by the par-* " *ish, that he is an inhabitant of the parish.*"

The statute of William having received a construction by these decisions, and our legislature having adopted the same language, it is to be presumed, that it was adopted in reference to those decisions.　They are, therefore, good authority in fixing a construction to our statute.

The same construction has been given to a similar statute in Massachusetts, viz. " any person being a citizen of this or " any of the United States, and of twenty-one years of age, " *who shall hereafter reside in any town, or district, within this*

" *state*, for the space of ten years together, *and pay all taxes*
" *duly assessed on such person's poll or estate*, for any five years
" within the said time, shall thereby gain a settlement in such
" town or district."

No distinction will probably be attempted between the
Massachusetts statute and our own, as that part of our stat-
ute, on which the present question arises, is copied, verbatim,
from the Massachusetts statute, which was passed three
years previous. In construing the Massachusetts statute,
Judge *Parsons* has adopted the English law, unreservedly, in
5 *Mass. Rep.*, *Wrentham vs. Attleboro.* Judge *Sewall* also re-
cognizes and confirms the same decision in 10 *Mass. Rep.* 396,
*Billerica vs. Chelmsford.*

It is only in case of a fraudulent evasion of the provisions
of the law, that the party gains a settlement, though not tax-
ed. If the assessors omit to tax, on account of the inability
of the person liable to be assessed, it is not a fraudulent eva-
sion of the statute, but an equitable and discreet discharge of
their duty. In the present case we were prepared to shew,
and offered to shew, to the jury the honest reasons, which in-
duced the selectmen to omit the assessment of all public tax-
es on the pauper.

We do not urge the opinions of Judge *Parsons* and Judge
*Sewall*, on this subject, as binding authorities, which are not
to be departed from by this court ; but as the public and sol-
emn opinions of wise and learned judges, fortified by the ar-
guments adduced by them, we do think them deserving seri-
ous consideration. But we submit to the court, whether the
cases cited from the English law do not come under a differ-
ent aspect, and with an authority, which this court are not at
liberty to depart from. The legislature, by adopting the
language of the English statutes and cases, have acknowl-
edged and sanctioned the construction therein adjudged, and
have, in effect, incorporated them into our statute. They
are, therefore, not merely sage opinions, or learned argu-
ments, but the law of the land.

Further, we would ask leave to doubt, whether the stat-
ute will bear a different construction from that we affix to it.

If a person may gain a settlement, without an assessment or payment of taxes, it is *residence and ownership of estate alone*, that gives the settlement ; and that part of the statute, which requires a payment of all taxes duly assessed, is rendered nugatory, and may as well be stricken from the book. By this a known rule of construction is violated, that every word and clause of a statute shall have a meaning, if a meaning can reasonably be assigned to it, consistent with its general intention.

We cannot believe, that the statute requires a tax to be assessed upon the property or person of one, who, by reason of his poverty, is unable to discharge the tax. Neither does the statute contemplate an absolute moral inability. It may be said truly, that there is none so poor, from whom a little tax might not be wrung—any human creature might claim so much from the hand of common charity. But a statute, which aims to alleviate the miseries of poverty, is not to be explained according to such principles. If the assessors in *good faith* question the ability of an inhabitant to satisfy a tax, it was not the intention of the statute to demand an experiment to be tried upon the nerves of an unfortunate pauper. It is requiring an idle ceremony, to say that a tax shall be assessed, and then, if necessary, abated. In most instances, certainly in some, the assessors have the same means of knowing the ability of the person to be taxed, as well before, as after the assessment. It is a maxim, *lex neminem cogit ad vana.* A tax is not to be assessed, for the purpose of having it abated.

If it be said, that the pauper, while she owned real estate of the value of $150, was not wanting in ability to pay a tax, we reply, that the pauper's real estate was no fund for the payment of taxes,—that she had no personal estate, and that the body of an infirm, diseased woman, of almost fourscore years, was not a decent subject of experiment.

On the second point.

It is not to be doubted, that the opinions of witnesses may, in some cases, be competent evidence of facts, on which a jury may be called upon to pronounce a verdict. Although, as

a general proposition, the opinion of a witness is not evidence, there are, notwithstanding, many exceptions to this rule. " On questions of *science*, or *trade*, or *others* of the same kind," says Phillips, " persons of skill may speak not only to facts, but are allowed also to give their opinions in evidence." Of this class, the opinions of physicians as to the probable effects of given medicines, and of the state of a patient,—of ship-builders, or masters, on the seaworthiness of a ship, from a survey taken by others, are cited as instances. The opinions of witnesses, as to the authenticity of bank notes, is of common occurrence in this court. The reasons, on which the rule is founded, are obvious. For if the facts, from which these scientific or skilful men deduce their opinions, were stated to a jury, that jury would still be incompetent, from want of science, to draw a just conclusion. But these opinions are entitled to much greater weight, if the process of reasoning, from which they result, is expressed clearly to the understanding ; and if conflicting opinions are to be weighed and balanced, all other things being equal, it seems to be a principal mean, by which a preference would be given of one opinion to another.

It is also well settled, that in all judicial proceedings, in which character is in question, evidence of opinions alone is competent testimony, and not the facts, from which those opinions may have been gathered. This rule arises from the necessity of the case. All the various facts and circumstances, which constitute character, cannot be collected, investigated, examined and balanced.

We apprehend, that *opinions* of *value* or *worth* belong also to the same class, and must be admitted from the necessity of the case, though they may not be subject to all the limitations of evidence of character. Value is, in its nature, so vague and indefinite, that no human scrutiny can seize all its constituent parts. A moment of reflection will prove, that if all the different facts, on which it depends, were to be given in evidence, such examination would be interminable ; it would be collecting, one by one, the scattered rays of light. Although it may be impossible to do this, it is not,

therefore, to be understood, that opinion alone is to be exclusively received? The reasons of the opinion may be demanded with much propriety, and on the force and conclusiveness of these reasons, will mainly depend the weight of the opinion. But still the opinion is competent evidence, and is more or less credible, as these reasons are more or less convincing.

In our remarks upon value, we have applied to the word its commonly received signification, that is, the sum of money a thing will produce to the seller, when it is sold. We are aware, that this is not abstractly the true measure of value. The quantity of labor and capital, necessary to produce a given article, or, in other words, the actual cost of its production, is the true criterion of its worth. For instance, if a manufacturer be asked the value of a yard of cloth, his opinion of its value will be determined by his calculation of the expense of producing a yard of cloth of similar quality. If we ask a retail dealer the value of a yard of cloth, his opinion of its value will be determined by the quantity of money such an article will produce in the market. It is apparent, that the marketable value may be affected by a multitude of circumstances, which will not, in their results, extend to the cost of production.

It is unquestionably the marketable value, that the statute regards, and not the cost of production. For the common transactions of men have respect to that alone.

Let us apply this reasoning to the present case. *Mrs. Smith*, the pauper, owned a small house and one fourth of an acre of land. To prove its value, the court said, we must describe it, and the jury would decide upon its value from the description ; but if the witnesses had noted and described every particle of matter, of which it was composed, it is apparent, that the jury could have arrived at no accurate conclusion. Because all the particulars of such a description might be united in a similar estate, differently situated, and yet it would produce a price widely different. The jury, by some possible conjunction of calculation and conjec-

ture, might, perhaps, have approached near the cost of such a building ; and then by deducting the wear and tear of forty years, to be collected from all the testimony, which might be thought pertinent, perhaps, come so near to the value as is implied in the cost.   But is it clear, that if a building would cost, in its erection, $150, 'tis therefore of that value ?   It is believed, that experience is in truth very different.

This property was accurately described by one of the witnesses, who owned property adjoining, had particularly examined it, and gave his opinion, under oath, that it was not worth more than $130.   Another witness, who owned the reversion, after the decease of *Mrs. Smith*, and owns land adjoining, had deposed, that he estimated it worth $120, clear of incumbrance, and would sell it for that sum.   The credibility of these witnesses was not impeached, and is not impeachable ; but the jury were induced to believe, from the description of the property, and evidence of other facts, from which its value could not be correctly ascertained, that it was worth $150.   These witnesses were confirmed by two or three others, and their credibility not impeached ; but yet their opinions were disaffirmed by the jury.

The court permitted other testimony to be offered as within the rule, which, we think, cannot be distinguished from that rejected.   A witness testified, that other real estate, in the immediate vicinity of that in question, had been offered for sale for a certain sum ; and another witness was permitted to testify as to the relative value of those different estates.   The court cannot avoid perceiving, that this testimony, as to the relative value, was founded merely on opinion, and was admitting indirectly the same kind of proof, which was rejected directly.

The kind of proof that arises from actual sale of property is, if we understand the rule of the court, admissible as competent evidence.   It cannot be supported, that this species of evidence is not founded on opinion.   It is the opinion conjointly of the seller and the buyer.   The seller is of opinion, that the property is not worth so much as the money he receives.   The buyer deems it worth more to him than the

money given. The sale, therefore, is but the opinion of two persons. And it is very often the case, that the sale of property does not furnish the true test of its value. It may be made under circumstances of pressing necessity on the part of the seller. The motive of the purchaser may sometimes be some 'visionary scheme of speculation. The opinion, therefore, of an intelligent and honest man, so situated as to be able to give it understandingly, is certainly a much surer test. It is from this consideration, that the actual sale of property, especially of real estate, is not the true measure of its value—that the law has made provision, that real estate shall be taken by the creditor, in *satisfaction of his debt*, at an appraised value. It is considered as a humane provision in relief of the debtor, and in derogation of the rights, and often much against the interest, of the creditor.

We think, therefore, that from these considerations, and others, which might be suggested, and will occur to the court on reflection, that value or price is founded essentially on opinion, and from its nature is susceptible of no different proof, from that, which we offered to shew to the jury, and was rejected by the court as incompetent.

*Sullivan*, for *Chester*.

GREEN, J.* The decision of the first question in this case depends on the construction of that part of our statute of January 1st, 1796, which prescribes the fourth mode of gaining a settlement, and which provides, that " any person of " twenty-one years of age and upwards, having real estate of " the value of $150, or personal estate of the value of $250, " in the town or district, where he dwells and has his home, " and shall, for the term of four years, pay all taxes duly as- " sessed on his poll and the estate aforesaid, shall thereby " gain a settlement in such town or district."

Our statute, in relation to settlements, was probably taken from the English statutes on the same subject, and appears to be in substance the same, except in what relates to illegitimate children, and gaining settlements by taxation. In the

---

* RICHARDSON, C. J., being an inhabitant of Chester, did not sit in the trial of this case.

latter case, the English statute of *William III.* is thus expressed :—" If any person, who shall come to inhabit in any " town or parish, shall be charged with, and pay his share " towards the public taxes or levies of the said town or pa- " rish, he shall be adjudged to have a legal settlement in the " same."

The decisions on this law, as might be supposed, have been, that there must have been a taxing or charging by the town, and a payment by the pauper.

The material difference between the two laws, as relates to the point in question, is, that our statute does not, in express terms, require the pauper to be assessed, but only says, " shall pay all taxes duly assessed on his poll and the " estate aforesaid."

The only inference to affect this case, which can be drawn from the variance in the two laws, is, that if the English statutes were consulted in forming our own, the omission in the latter, of expressly requiring the person to be taxed, must have been intentional, and designed to render it unnecessary as a requisite in gaining a settlement.

But we must principally rely, for a construction in this case, on what may be gathered from the statute itself, and the decisions in analogous cases, in other states.

In adverting to the different parts of the statute, we find the eighth mode of acquiring a settlement expressed as follows :

" Any person of the age of twenty-one years, who shall " hereafter reside in any town or district within this state, " and being taxed for his poll for the term of seven years, " shall pay all taxes legally assessed on his poll and estate, " during the said term, shall be an inhabitant of said town " or district."

Had the framers of this act intended, that by the words, " pay all taxes duly assessed on his poll and estate," which are used in the paragraph, on which this question arises, should be understood a taxing of the pauper by the town, and his paying the taxes, it is quite unaccountable, why they should have taken the precaution to use the words

" being taxed" in the latter paragraph ; unless they intended a distinction in the two cases, it is extremely difficult to account for their not making use of the same words in the latter as in the former paragraph. It may also be added, that the actual taxing of the pauper being explicitly required in one instance to effect a settlement, the omission of such express requirement in another instance, in the same statute, necessarily leads to the conclusion, that in the latter case, that requisite was intended to be dispensed with ; and it may further be said, that if taxing is indispensable in gaining a settlement, under the part of the statute referred to, such taxing must, to effect the purpose intended, necessarily continue the four years ; and in case the selectmen should, from any other cause than a fraudulent design, fail of taxing the fourth year, there is reason to doubt, whether the individual would gain a settlement, although he had paid the taxes the three preceding years.

This question seems to be settled in Massachusetts, in a case analogous to the present. ( *The Inhabitants of Wrentham vs. The Inhabitants of Attleborough,* 5 *Mass. Rep.* 430.) There the question was, whether the pauper had gained a settlement in Mansfield, under the part of their statute, which provides, that " Any person, being a citizen of this or " any of the United States, and of the age of twenty-one " years, who shall hereafter reside in any town or district " within this state, for the space of ten years together, and " pay all state, county, town or district taxes, duly assessed " on such person's poll or estate for any five years within " the said time, shall thereby gain a settlement in such town " or district."

It appeared, that the pauper, for more than ten years together, after the year 1794, being of the age of twenty-one years, and a citizen of the United States, resided in Mansfield, and was duly assessed for five years during said term, in all the state and town taxes assessed during that time upon the inhabitants of Mansfield, and paid all the taxes so assessed upon him ; and during the said ten years he was assessed one year only for the county tax, and paid the same,

and the other inhabitants of Mansfield were assessed for a county tax nine years during said ten years.

The objection against the pauper's having acquired a settlement in Mansfield was, that he was not assessed in that town for the county tax for any five years within the ten years of his residence there, but only for one year.

The *Chief Justice*, in delivering the opinion of the court, remarks, " It is the intention of the legislature, if a citizen " of full age shall live in any town for ten successive years, " and during half that period has taxable property to con- " tribute to the charges of the town, in paying his proportion " of the several taxes imposed on the inhabitants, he shall " have a settlement there ;" and this opinion is not predicated on the idea of fraud in the assessors, in not assessing the pauper for the county tax ; for in the same opinion it is afterwards said, that whether the omission was by accident or design, the result would be the same.

It has been urged, by the plaintiff's counsel, and with much ability, that the whole law, on the subject of settlements, manifestly shews, that it was never intended, that an individual should acquire a settlement in a town or parish, without their consent, either express or implied ; and in recurring to the English statutes, and consulting our own from the first organization of the state, there is much reason to believe such to have been the design of all the early statutes ; but admitting it to be so, we feel it incumbent on us to say, that the law, which embraces this case, has departed from that rule ; and our opinion is, that the instruction to the jury was correct.

The other objection, that the opinions of witnesses, as to the value of the property owned by the pauper, were rejected as evidence, although they were well acquainted with it, and had examined it for the purpose of ascertaining its value, and with a view to purchase, has also been considered ; and we think it cannot prevail.

The general rule is, that the opinion of witnesses is not evidence ; but there are, from necessity, exceptions to this rule ; and if the evidence offered was within any of the exceptions, then it was improperly rejected.

On questions of science and trade, or others of the same kind, persons of skill may, no doubt, be permitted to give their opinions in evidence; because the jury, being wholly unacquainted with the particulars, on which such opinions are founded, would be unable to draw any correct conclusion, from hearing them stated; for instance, was a physician to state the particular medicine administered to a patient; from being unacquainted with the operation and effect of such medicine, the jury would be wholly incompetent to judge, whether such treatment would probably produce the death of the patient or not. So if a ship-builder should state to a jury of the country the condition of a vessel, they would be unable to judge, whether she would be sea-worthy or not. So should a mechanick describe to the jury a complicated machine, constructed of different materials, with which they were unacquainted, it would be impossible for them to judge, with any degree of accuracy, of its value; and was a witness to describe a particular piece of cloth of foreign manufacture, this would afford a jury but little aid in judging of its value, they being ignorant of the cost of manufacturing, and of the price, at which such an article usually sold; in these, and similar cases, it is from the opinion of persons skilled in the particular science or trade, and dealing in the particular article, that satisfactory evidence can be obtained; but when the necessity of admitting such evidence ceases, the exceptions to the general rule also cease.

In the case before us the witnesses were called to testify to the value of a small piece of land, and a hut upon it, in the town of *Rochester*. It was not pretended, that these witnesses had been in the habit of buying and selling such property in Rochester, or had any particular skill in judging of the value; but had such evidence been offered, it would, probably, have been rejected; because the jury must be supposed competent to ascertain this without the aid of such evidence.

There is, perhaps, no species of property in the community, of the value of which a jury are better acquainted,

Rochester<br><i>vs.</i><br>Chester.

than houses and lands ; most of them, from experience, know the value of every article, of which a house is constructed, and they also have knowledge of the local situation of all the towns in their county, and the general value of the real estate in them—they are usually drawn from every part of the county ; but if, in this instance, none of the jury were from the neighbourhood of Rochester, still by having the house, and the relative situation, and quality of the land, described by witnesses, they would, with the aid of their general knowledge of the town, be able, with sufficient accuracy, to judge of their value.

Should the evidence offered be adjudged admissible, the decision must extend to all cases, where the value of property is in question, and would destroy the rule itself, so far as it applies to cases of this description.

After the fullest examination, we entertain no doubt, that the evidence was properly rejected ; and there must be

<i>Judgment on the verdict.</i>