## BEARD *vs.* KIRK.

The opinion of a witness respecting the value of an article, cannot be given in evidence merely because he is particularly familiar with the use and price of articles of that kind.   If he has knowledge of the market value of such articles, or the usual price at any place in the vicinity, he may state it.

Where a witness on cross examination stated certain facts, and afterwards, being recalled, made a further statement, qualifying and changing in some degree his former evidence—*Held,* that the court could not assume the last testimony as a true statement of the fact, or instruct the jury that it qualified or controlled what he had before testified ; but that the whole must be submitted to the jury, and they must judge what part of the testimony was correct.

Where an agency, constituted by writing, is revoked, but the written authority is left in the hands of the agent, and he subsequently exhibits it to a third person, who deals with him as agent, on the faith of it, without any notice

of the revocation, the act of the agent, within the scope of the authority, will
bind the principal.

TROVER, for a sled.   It was in evidence that the defend-
ant took the sled from Moore's tavern, in Chelmsford, Mass.,
without authority—used, and broke it—and returned it to
the same place.   The parties reside in this state.   The
plaintiff, to show the value of the sled, offered the deposition
of a witness, containing the following clause, viz., " I have
been engaged seven years in teaming ; have owned many
sleds ; have bought and sold many ; am acquainted with the
value of them, and when I last saw this sled I should think it
worth from fifteen to twenty dollars." The defendant object-
ed to the admission of this testimony, and it was rejected.

The defendant offered evidence to reduce the damages.

In the course of the trial, John Adsit, a witness on the
part of the plaintiff, stated, on his cross examination, that
the plaintiff, some time before the sled was broken, wished
him to sell it, if he could get what it was worth—that he
had a paper authority from the plaintiff, (which was left for
him at Hillsborough, where he usually received orders,) di-
recting him to sell the sled, if he could sell it for what it was
worth ; and if not, to bring it back, which he showed to Mr.
Moore, and had no recollection of showing it but once—that
the sled was not then broken—that after this he saw the
plaintiff, and told him he had not sold—that after it was
broken he informed the plaintiff of that, who told him to
request Moore to settle with the defendant for the damage—
and that the plaintiff afterwards gave him no authority to sell,
and that he did not offer to sell the sled.

Upon being subsequently called by the plaintiff, he stated
that he was not acquainted with the plaintiff's hand writ-
ing—had never seen him write, and did not know that he
could distinguish his writing—that when he told the plaintiff
the sled was broken, the plaintiff told him to ask Moore to
settle with the defendant for the damage, and said he need
not go any farther in selling it ; and that he thought he so

stated when first on the stand—that the plaintiff at first gave him a verbal authority to sell, if he could get what it was worth—that the writing he received afterwards contained a request that he would sell or bring back—that he had no other reason for supposing that the writing was the plaintiff's, except the facts before stated, and that the writing had been lost.

The defendant then offered the testimony of Moore, and others, to prove that Adsit, after the sled was broken, sold it to one Albin, and that he at that time said he had authority from the plaintiff to sell, and exhibited a paper purporting to be a written authority, from the plaintiff, to sell the sled ; which Moore testified was, he believed, the only time he ever saw the paper.

The plaintiff objected, that the contents of the writing could not be given in evidence, inasmuch as the signature of the plaintiff had not been proved ; and that if the signature had been proved by competent evidence, the authority under it, and also the verbal authority, had been revoked before it was executed.

The court directed the jury that the testimony of Adsit, respecting the writing, with the other facts in the case, was competent evidence for their consideration, to prove a written authority from the plaintiff to sell, and they were to weigh it—that the direction of the plaintiff to Adsit, to have Moore settle with the defendant for the damage merely, as first stated, would not amount to a revocation of his authority to sell, being consistent with it—but if he also told Adsit that he need go no farther in selling it, as he stated when called the second time, that would amount to a revocation—that if the authority was revoked, Adsit could not afterwards exercise it, lawfully, as between him and the plaintiff; but if the authority was in writing, and no notice given of the revocation, and no means taken to prevent a sale by him, and if the written authority was left in his possession, and he exhibited it, and thereby induced a third person to trade and

purchase the sled, that would bind the plaintiff, the property in such case would pass, the plaintiff would have a right to claim the money of Adsit, and the defendant be entitled to have the value of the sled, at that time, go in reduction of the damages.

The plaintiff excepted to the foregoing ruling and instructions, and moved for a new trial.

*Farley, & Prentiss,* for the defendant. The opinion of a witness is not admissible in evidence, except in matters of trade, science, and skill. 3 *N. H. Rep.* 349, *Rochester* vs. *Chester ;* 6 *N. H. Rep.* 462, *Peterborough* vs. *Jaffrey ;* 7 *Wendell's R.* 72, *Jefferson Ins. Co.* vs. *Cotheal.*

Persons of skill are permitted to give opinions only in cases where facts cannot be given in evidence to the jury, so that they can understand the subject. *Norris' Peake's Evid.* 279 ; 4 *Pick.* 156, *Davis* vs. *Mason ;* 1 *Camp.* 117, *Beckwith* vs. *Sydebotham.*

The revocation of the authority of an agent takes effect, as to the agent, when he is notified ; as to others, when they are notified. *Story's Agency* 470 ; 2 *Kent's Com.* 644.

*Baker,* for the plaintiff.

PARKER, C. J. The opinion of the witness, respecting the value of the sled, was not admissible in evidence. 3 *N. H. Rep.* 349, *Rochester* vs. *Chester ;* 6 *N. H. Rep.* 462, *Peterborough* vs. *Jaffrey.* He was not a manufacturer of sleds, if that might be supposed to indicate skill, nor was he otherwise possessed of any particular science, or skill, respecting their construction or use. The fact that he had used sleds more than people in general, and had bought and sold many, might serve to show that he had more knowledge respecting the best form and size, and respecting the price at which they could be purchased or sold, than many others ; but this is not sufficient to give him the character of an ex-

pert. If it was so, the fact that any person was more familiar with the use and price of any articles than other members of the community generally were, would give him the character of an expert in relation to articles of that description, and admit his opinion in evidence. If there had been such a thing as a market value of sleds at the place, the witness's knowledge respecting sales might have enabled him to testify to the market value of such a sled, which would involve matter of opinion, to some extent, in making the comparison; but the evidence would be admissible, taken together, as a matter of fact. (10 *N. H. Rep.* 131, *Whipple* vs. *Walpole.*)

The statement of the witness Adsit, in his cross examination, furnished sufficient evidence of a written authority, from the plaintiff to him, to sell the sled. He said he had a paper authority from the plaintiff, left for him at a place where he usually received orders, directing him to sell, if he could sell for what it was worth; if not, to bring it back—that he afterwards saw the plaintiff, and told him he had not sold, &c. No question appears to have been then made respecting his knowledge that the paper was genuine, nor any objection to the proof of its contents, or enquiry whether it could be produced. His statement that he informed the plaintiff that he had not sold it, without any expression of surprise by the plaintiff, or any denial of his right so to do, tended directly to show that the paper which had been delivered to him was, what it purported to be, an authority from the plaintiff. Nothing was then said about a revocation. On being subsequently recalled, he was examined respecting the signature to the paper, and testified that he was not acquainted with the writing of the plaintiff, and that the plaintiff at first gave him a verbal authority to sell—that, when the sled was broken, the plaintiff said he need go no farther in selling it, and that the paper had been lost. The court, upon this state of facts, could not assume that there was no sufficient evidence, to be left to the jury, on which

they might find a written authority to sell. That a paper had existed, which purported to be signed by the plaintiff, and to confer an authority on the witness to sell, and a direction to bring the sled back if he could not sell, which paper he had received at a place where he usually received orders, appeared from his testimony, at each time when he was called. He stated the last time, that it was lost. The fact that he did not know whether the signature was that of the plaintiff, and the fact, (supposing it to be true,) that the plaintiff had previously given him a verbal authority to sell the sled, were not inconsistent with the supposition that the paper was genuine; and if they had been, the defendant was entitled to have the evidence, as it was first stated by the witness, considered by the jury, and weighed by them along with his subsequent statement, and to argue that they were warranted, upon the whole evidence, in believing that the testimony first given by the witness was true, and the subsequent statement the result of some communication with the plaintiff after his first examination. The court could not, under such circumstances, assume the last statement as the true testimony of the witness, or instruct the jury that it qualified and controlled what he had before stated; or direct the jury that there was not sufficient evidence, on which they might find a written authority to sell. Nor could the court, upon the last statement, say that the authority, whether written or verbal, was revoked, or that the jury must so find. The whole evidence given by the witness was for their consideration, and they were authorized to believe a part of it, and reject any other part, according to their convictions upon the whole case before them.

It was so left to the jury, with directions that if the plaintiff told Adsit, as he testified the last time, that he need go no further in selling, that would amount to a revocation, as between Adsit and the plaintiff—but with the further direction, that if the authority to sell was in writing, and no notice given of the revocation, and no means taken to prevent

Beard *v.* Kirk.

a sale by him ; and if the written authority was left in his possession, and he exhibited it, and thereby induced a third person to trade and purchase the sled, that would bind the plaintiff.

There was evidence from Moore, that Adsit sold the sled, declaring at the time that he had authority so to do from the plaintiff, and exhibiting a paper, purporting to confer such authority.   If that paper was genuine, the plaintiff had constituted Adsit his agent by a written power, which enabled him to hold himself out as possessing authority, after the plaintiff had in fact revoked it.   Assuming that the plaintiff did so far revoke it as to say to Adsit that he need not sell, yet as he left the written power in his hands, and gave no notice of the revocation, if Adsit exhibited the power, concealed the revocation, and made a sale, the plaintiff must be bound by his act.   The purchaser relying upon the power which the plaintiff had enabled Adsit to exhibit, and believing it still in force, would be dealing with the agent within the scope of the authority he thus appeared to possess ; and the plaintiff, in that state of facts, would be precluded from setting up the revocation of the power against the purchaser. ( 10 *N. H. Rep.* 160, *Davis* vs. *Lane ;*) 2 *Livermore on Agency* 310.   Having enabled the agent to commit a fraud, by which either the purchaser or himself must suffer, the loss ought in justice to fall on him.   4 *N. H. Rep.* 457, *and auth. cited ;* 6 *Mass. R.* 428, *Thurston* vs. *McKnown.*

*Judgment on the verdict.*