# HOITT *v.* MOULTON.

In an action for breach of promise of marriage, a deposition was offered by the defendant, in which the deponent said that she saw the plaintiff come from her brother's room with a letter in her hand, and then proceeds to say, "and which letter I took to be one I had frequently seen in my brother's closet. I so judged in regard to the letter, because I did not see it there after this time." *Held*, that the words in quotation were but the opinion of the witness, and inadmissible.

The same witness also stated in her deposition, an expression used by the plaintiff, and then added, "from which I supposed she had dismissed my brother." *Held*, that her supposition was a mere inference of the witness, and incompetent; that the words being given, the jury were to draw the inference, and not the witness.

Witnesses in giving their testimony are not required to speak with such confidence as to exclude all doubt in their minds. If the fact is impressed on the memory, but the recollection does not rise to positive assurance, it is still admissible to be weighed by the jury. And where a deposition was offered containing this question and answer, "What did you learn from the plaintiff and your sister after this interview? Answer. I think she said he was at liberty to go where he pleased." *Held*, that the evidence was admissible.

Where a witness has seen an individual write, and has so fixed the handwriting in his mind as to be able to testify, that in his *belief* the paper offered is in the handwriting of the person in question, his testimony is competent to be weighed by the jury.

A question was made as to the handwriting of certain letters. A witness testified that he had seen the defendant write, and he believed the letters to be written by the defendant. On cross-examination, he stated that he had seen the defendant write notes two or three times; he did not know how often, and did not read his writing; he was not very near to him when writing. *Held*, that the evidence was *primâ facie* competent to prove the handwriting of the letters.

The deposition of a witness contained this clause: "He was knowing to the fact of the farm on which the defendant now lives being mortgaged to one W., by deed, dated January 28th, 1842, the consideration being $1200;" and the deposition of another witness contained this clause: "He had seen two mortgages upon defendant's farm for $1200 and for $525, and the notes for those sums in the hands of the payees." *Held*, that the evidence was secondary and inadmissible. That where the evidence offered discloses of itself the existence of other and higher evidence, that which is offered is secondary and incompetent, and cannot be received until the foundation is regularly laid for its introduction.

The opinions of witnesses in regard to the value of land are not admissible. And where a witness testified, "that the defendant's farm would not sell for more than $1800"— *Held*, that the evidence was incompetent.

Hoitt *v.* Moulton.

Evidence that witnesses are persons of intemperate habits, and have been seen intoxicated, is not admissible to impeach their general characters for truth. The inquiries must be confined to their general reputation for truth and veracity, and are not allowable as to particular acts of immoral or criminal conduct.

Where an unmarried man kept up a written correspondence with an unmarried young lady of suitable age, who was not his relative — *Held*, that the evidence was competent to be submitted to the jury, from which they might find a promise to marry.

ASSUMPSIT, upon the alleged breach of a marriage contract. There were two counts relied upon in the declaration. The first alleged mutual promises to marry upon request, in the usual form of such counts, and that the defendant on the 1st of March, 1846, and before action brought, married another woman. The second count alleged mutual promises to marry in a reasonable time, in the usual form of such counts, and that a reasonable time had long since elapsed; yet the defendant, though often requested, had not married the plaintiff.

The defendant pleaded the general issue.

Several exceptions were taken to the rulings of the Court upon the admission and exclusion of evidence. An exception was also taken to the instructions of the Court, as given to the jury upon one branch of the case. The facts upon which these exceptions were based, will sufficiently appear in the opinion of the Court, without stating them more at length here.

The jury returned a verdict for the plaintiff, which the defendant moved might be set aside and a new trial granted, for supposed error in the rulings of the Court. And the questions arising upon the motion were transferred to this court for decision.

*Stickney & Tuck* (with whom was *French*), for the plaintiff.

*Wells*, for the defendant.

EASTMAN, J. Several questions are raised in this case, most of which can readily be decided, as the principles upon which they depend, are of familiar application. We will consider them in the order in which they are sent to this court.

The first question relates to the admissibility of certain statements of a witness, which are set forth in a deposition taken by the defendant. The witness was the defendant's sister. She testified that she saw the plaintiff come from her brother's room with a letter in her hand, " and which letter, (she says,) I took to be one I had frequently seen in my brother's closet. I so judged in regard to the letter, because I did not see it there after this time." That portion which is included in marks of quotation, was objected to, and the Court ruled it inadmissible. This ruling, we think, was correct. The testimony excluded, was but the opinion of the witness in regard to the identity of the letter; and that opinion was based, not upon any resemblance between the letter in the plaintiff's hand and the one alluded to, but upon another and distinct matter, the fact that she did not again see the letter in her brother's closet. She might, perhaps, have been permitted to testify that she had seen a letter in her brother's closet; that she afterwards saw the plaintiff coming from her brother's room with a letter in her hand, and that she did not see any letter in her brother's closet after that time. That certainly is as far as she could go; and if the jury could make any satisfactory deduction from the statements, they might do it.

This witness also stated an expression used by the plaintiff, and then added, "from which, I supposed she had dismissed my brother." This supposition of the witness was objected to and held inadmissible. And here, too, we think the ruling of the court was correct. The expression in the deposition which was objected to, was a mere inference of the witness from words spoken. The words being given, the jury are to construe their meaning and draw their inferences, and not the witness.

In another deposition there was the following interrogatory and answer: "What did you learn from the plaintiff and your sister after this interview?" Answer: "I think she said he was at liberty to go where he pleased." This was objected to, but admitted; and, we think, rightly so. Witnesses are not required to give their testimony with absolute positiveness. Were such the case, many of the most truthful and reliable men

would be wholly excluded from testifying in a court of justice. They are frequently timid lest they may overstep the bounds of truth, and in narrating their evidence almost always do it with much caution. Witnesses are not required to speak with such confidence as to exclude all doubt in their minds. If the fact is impressed on the memory, but the recollection does not rise to positive assurance, it is still admissible to be weighed by the jury. And on any subject to which a witness may testify, if he has any recollection at all of the fact, he may express it as it lies in his memory, of which the jury will judge. 1 Greenl. Ev. § 440. In *Snell* v. *Moses*, 1 Johns. 99, 103, a witness being called to prove a conversation with a party, said he could not recollect the expressions used, but would give his impressions as to the substance of the conversation. This mode of giving the conversation was objected to, but held admissible.

The qualifying words, "I think," used by this witness, are of frequent occurrence in the trial of cases. Sometimes, when uttered by an honest, careful man, they detract nothing from the weight of his testimony; while, at others, they are thrown in by dishonest witnesses as a kind of supposed antidote to their perjury. But a witness is as liable to an indictment and conviction for perjury by using these words in connection with his statements, as though he gave his testimony directly and positively. So, also, if he express his belief or understanding of a matter. *Maxwell* v. *Warner*, 11 N. H. Rep. 568; *Eaton* v. *Rice*, 8 N. H. Rep. 568; *Rex* v. *Pedley*, Leach Cr. Cases, 365; *Miller's Case*, 3 Wils. 427; *Riggs* v. *Tayloe*, 9 Wheat. 486. It is always desirable that witnesses speak with as much distinctness, ** directness, and positiveness, as the truth will permit; but absolute assurance is by no means necessary in order to make the evidence admissible.

Certain letters, purporting to have been written by the defendant to the plaintiff, were offered in evidence. To prove them to be in the handwriting of the defendant, a witness was called, who testified, that he had seen the defendant write, and he believed the letters to have been written by the defendant. On cross-examination he stated, that he had seen the defendant write

49*

notes two or three times; he did not know how often, and did not read his writing; he was not very near to him when writing. The evidence was objected to, but admitted; and no other evidence was offered on the subject. This evidence was not of the most satisfactory kind; at the same time it was such, as upon authority, was competent, *primâ facie*, to be judged of by the jury, and to fix the handwriting of the letters upon the defendant. By our practice, and the authorities generally, handwriting may be proved by the belief of the witness as to its genuineness, when the witness has seen the person in question write, so as to have any acquaintance with his handwriting. And this, though the witness has seen him write but once. The evidence may be slight, but if he is able to state that, in his *belief*, the handwriting is that of the person in question, it is competent to be considered in the first instance, and is sufficient until some rebutting evidence is offered. *Jackson* v. *Van Deusen*, 5 Johns. 144; *Powell* v. *Ford*, 2 Stark. Rep. 164; *Lewis* v. *Sapio*, 1 M. & Malk. 39; *Gaunels* v. *Alexander*, 4 Esp. Rep. 37; 1 Phil. Ev. 484, 485, and cases there cited; 1 Greenl. Ev. § 577.

The deposition of a witness was offered by the defendant, who testified that he was knowing to the fact, that the farm, on which the defendant lived, was mortgaged to Jonathan P. Webster, by deed dated January 28th, 1842, the consideration in said deed being twelve hundred dollars. The deposition of another witness was offered, who testified that he had seen two mortgages upon the defendant's farm for twelve hundred dollars and for five hundred and twenty-five dollars, and the notes for those sums in the hands of the payees. And that the defendant's farm would not sell for more than eighteen hundred dollars.

This evidence, contained in both of the depositions, was objected to, and held inadmissible. And we regard the ruling of the court correct. The evidence as to the existence of the mortgages upon the defendant's farm was all secondary. It shows of itself the existence of better and more satisfactory evidence; and is, therefore, within the principle of the substitution of an inferior kind of evidence for a superior kind; or the substitution of oral for written. This cannot be done, until it is shown that the writ-

ten evidence is lost, or beyond the power of the party to produce. *Sebree* v. *Dorr*, 9 Wheat. 558, 563; *Boon* v. *Dykes*, 3 Monroe, 529; *Roberts* v. *Tennell*, 3 Ibid. 247; *Cope* v. *Arbeny*, 2 J. J. Marshall, 296; *Rex* v. *Inhabitants of Padstow*, 4 Barn. & Adol. 208; 1 Gilbert, Ev. 5; 1 Phil. Ev. 218; 3 Stark. Ev. 389; 1 Greenl. Ev. §§ 84, 85, 86.

That part of the answer, in which the witness states that the defendant's farm would not sell for more than eighteen hundred dollars, is also inadmissible, within the rule of law as it exists in this State. We are aware that a different rule prevails in some jurisdictions, and that the opinions of witnesses as to the value of property, is held admissible. *Kellogg* v. *Krawser*, 14 Serg. & Rawle, 137. But such is not the case in this State. The opinion of a witness cannot be received to prove the value of property. *Rochester* v. *Chester*, 3 N. H. Rep. 349; *Peterborough* v. *Jaffrey*, 6 N. H. Rep. 462. He may state the cost of property of a particular description at a given place, in order to ascertain the value of property of a similar description. *Whipple* v. *Walpole*, 10 N. H. Rep. 130. He may describe the property and state sales of similar property in the vicinity of that in question, and if he knows the market value, he may also state that. *Bean* v. *Kirk*, 11 N. H. Rep. 397. After the property has been described, sales in the vicinity given, and, if real estate, its location and relative situation pointed out, it is supposed that a jury are quite as competent to judge of, and decide upon its value, as witnesses who have no more skill in such matters than the community in general.

The deposition of a witness was offered, who testified that he was acquainted with two of the plaintiff's witnesses. Of one he says: "He is a person of intemperate habits; he has seen him about the tavern and streets intoxicated, and would not believe him upon oath in any case, as he thinks he would testify to any thing for a glass of liquor." Of the other he states, "that he is commonly reported to be most of the time intoxicated or under the influence of liquor; he has frequently seen him intoxicated, and incapable of doing business."

The deposition of another witness was offered, who states, as

to the witnesses referred to, of one, that "he is a common drunkard; he had frequently seen him intoxicated; he would not take his word on oath, as he thinks he would swear to any thing for liquor." And of the other he says, that "he had frequently seen him intoxicated, and incapable of doing business." This evidence, contained in these two depositions, was objected to, and held inadmissible; and we think the ruling of the court, in excluding the evidence, was entirely correct. In attempting to impeach the character of a witness for veracity, the inquiries must be confined solely to his general reputation for truth. Any other course would lead to the multiplication of numerous collateral issues, which parties would not come prepared to meet, and could not be required to meet without notice, and litigation would be almost interminable. Bull. N. P. 296; 1 Phil. Evid. 291; *Rockwood's Case*, 4 State Tr. 693; 1 Greenl. Evid. § 461. Particular facts cannot be given in evidence. *Kimmel* v. *Kimmel*, 3 Serg. & Rawle, 338. Neither is an inquiry as to particular immoral conduct admissible. *Jackson* v. *Lewis*, 13 Johns. 505; *Jackson* v. *Osborne*, 2 Wend. 555. And in *Brindle* v. *McIlvaine*, 1 Serg. & Rawle, 282, it is said, that the general character for drunkenness is not admissible to impeach a witness, any more than general character that the witness had had an attack of paralysis. Even the conviction of a crime is not admissible in evidence to impeach the credit of a witness. He may be excluded as incompetent on that account, but his credibility cannot be reached in that way. *Chase* v. *Blodgett*, 10 N. H. Rep. 22. The proper practice is, first to inquire whether the impeaching witness has any acquaintance with the witness whose reputation is attacked, or is so situated as to know any thing of his general reputation, and then to put the inquiry, what the general reputation of the witness is for truth and veracity; and also the further inquiry, whether, from what the impeaching witness knows of the general reputation of the witness in question for truth and veracity, he would believe him under oath as soon as men in general: *State* v. *Howard*, 9 N. H. Rep. 485; *People* v. *Mather*, 4 Wend. 358.

Among the instructions given to the jury, the court charged

them that the fact, that an unmarried man kept up a written correspondence with an unmarried young lady, of suitable age, not his relative, was evidence of itself to be considered by the jury of a promise to marry. These instructions were excepted to by the defendant.

Promises of this kind, from the delicacy with which they are frequently viewed by the parties, and the consequent secrecy that follows, are oftentimes very difficult to be proved. In many cases even where an engagement has been of long standing, and marriage actually takes place, neither of the parties could prove any contract or promise to marry, by positive evidence. Whether this delicacy in concealing the real contract be false or not, it is no doubt true that secrecy, as to the fact, very frequently exists, and that, too, where the parties fully and honestly intend to carry out their contract. Nor is there any doubt that some individuals, from inconsiderate or base motives, enter into a marriage engagement and enjoin secrecy, where there is no well-formed or real intention of fulfilling the contract. And to require evidence of an express promise in actions of this kind, would frequently result in a denial of justice to an innocent and oftentimes much injured party.

The action for a breach of promise to marry is sustainable only where the promise is mutual, the consideration of the one promise, being the other promise. Consequently the mutual promises must be proved. 1 Rol. Abr. 1, 5, 22; *Harrison* v. *Cage et ux.* Carth. 467; 1 Ld. Raym. 386. This promise, however, is not within the statute of frauds. *Corn* v. *Baker*, 1 Str. Rep. 34. And when the contract is entered into between a person of full age and a minor, it is binding upon the person of full age. *Holt* v. *Ward*, 2 Str. Rep. 937; *Hunt* v. *Peake*, 5 Cowen, 475; *Millard* v. *Stone*, 7 Cowen, 22. As to the minor, it is voidable or not, at his election. Per Lord *Raymond*, in *Holt* v. *Ward*, above cited.

The promises must be proved either by express or presumptive evidence. 2 Saunders on Plead. and Evid. 665. In an action by a woman against a man, it was held that her carrying herself as one consenting and approving was sufficient evidence

of her having mutually promised, and that no other evidence is usually given. *Sutton* v. *Mansell*, 6 Mod. Rep. 172 ; 3 Salk. 16. See also *Daniels* v. *Bowles*, 2 C. & P. 553 ; *Southard* v. *Rexford*, 6 Cowen, 254. And in *McKee* v. *Nelson*, 4 Cowen, 355, it was held, that in an action for breach of a promise to marry, a person accustomed to observe the mutual deportment of the parties may give in evidence his opinion upon the question, whether they were attached to each other. Upon these authorities, and the general principles governing the action of assumpsit, we hold it to be quite clear that an action for a breach of the marriage contract may be sustained, without proving an express promise. The conduct and demeanor of the parties towards each other, the attentions shown and received, their situation and circumstances in life, business arrangements and preparations for entering into the marriage state, the manner in which the parties are treated and received by their friends and relations, and various other matters that might be suggested, are proper for the consideration of the jury in deciding the question, whether an engagement actually exists between them or not. Ordinarily, there are many circumstances that are competent to be considered by a jury ; and, in the case before us, it appears that evidence of attentions shown by the defendant to the plaintiff, from 1833 to 1841, were introduced without exception. But that has no connection with the precise question before us, which relates merely to the instructions of the court in regard to the written correspondence.

A correspondence is not entered into between any individuals, without some motive or object. If it is carried on between gentlemen, matters of business are the usual occasion, though sometimes friendship or literary gratification is the actuating motive. If it exists between ladies, it usually arises from attachment and friendship, and sometimes from business. If it be between gentlemen and ladies, which is more rarely the case where an engagement has not taken place between them, it generally proceeds from purely literary tastes and habits ; perhaps, however, from business relations, or possibly from simple friendship. A correspondence is also frequently carried on between relatives,

from various motives. But where, as by the facts stated in this case, a written correspondence is kept up between an unmarried gentleman and an unmarried young lady, of suitable age, who is not his relative, the most common and natural inference is, that it is upon matrimonial subjects; since where an engagement actually exists, a correspondence almost invariably follows. But young marriageable ladies, at least prudent ones, do not allow themselves to be engaged in a correspondence with unmarried men, unless they suppose a marriage contract exists between them. And unmarried men do not desire that such a correspondence should be carried on where an engagement does not exist, unless it be from some improper motives, or with the hope and expectation of an ultimate engagement. Business may require a correspondence between persons standing in such a relation towards each other, but it is generally of a short continuance, and any presumption of a matrimonial engagement that might arise therefrom, could easily be rebutted by the surrounding circumstances of the parties. That an engagement exists, or an offer has been made and accepted where a correspondence takes place between such parties as are described in this case, is, we think, in accordance with general experience, which is one of the usual and most satisfactory tests of human evidence; and although, when taken alone and disconnected from other facts, it may not be so strong as some evidence that might be suggested, yet we hold it competent to be submitted to a jury, and from which they may find a promise to marry, if the evidence satisfies them of the fact.

Arriving at these conclusions, the exceptions must all be overruled, and there must be

*Judgment on the verdict.*