AGENCY OF CANADIAN CAR & FOUNDRY CO., Limited, v.
PENNSYLVANIA IRON WORKS CO. (two cases.)

(Circuit Court of Appeals, Third Circuit.   February 25, 1919.)

Nos. 2361, 2362.

1. REPLEVIN ⬦70—ISSUES—BURDEN OF PROOF.
    A plea of property by both parties in replevin puts in issue plaintiff's
    interest, and imposes upon it the burden of proving its right to the im-
    mediate and exclusive possession of all the property.

2. BAILMENT ⬦7—CONTRACT TO MANUFACTURE GOODS—CONSTRUCTION—
    RIGHT OF POSSESSION.
    A contract under which plaintiff delivered certain parts of steel shells
    to defendant, which was to furnish the necessary work and materials for
    their completion, construed, and held to give defendant a special property
    in the shells, upon which it had expended work and materials, and the
    right to their possession until inspected and accepted by plaintiff.

3. REPLEVIN ⬦96—SUFFICIENCY OF VERDICT
    A verdict for defendant in replevin for a sum of money only, where the
    goods were taken by plaintiff on the writ, must be construed as for the
    value of the goods, where there was no evidence of damages for caption
    and detention, and is equally good at common law and under Act Pa.
    April 19, 1901 (P. L. 90) § 7.

4. REPLEVIN ⬦71(1)—EVIDENCE—VALUE OF DEFENDANT'S SPECIAL PROPERTY
    INTEREST.
    In replevin for unfinished artillery shells, delivered by plaintiff to de-
    fendant under contract for completion, upon which defendant had expend-
    ed labor and material, but which were unfinished and without market
    value when plaintiff broke the contract and replevied them, defendant
    may show the value of its interest by proving the cost of its labor and ma-
    terial, and in addition what would be a reasonable and ordinary profit
    thereon.

5. ESTOPPEL ⬦63—CLAIM OF PROPERTY BY DEFENDANT—LIEN.
    A manufacturer, working on material furnished by plaintiff when such
    material was replevied, held not estopped to assert a property right therein
    by the fact that it had previously claimed a lien.

6. REPLEVIN ⬦72—LIEN OF DEFENDANT.
    Evidence held not to sustain the claim of a defendant in replevin to a
    lien on the property replevied.

7. WORDS AND PHRASES—"VALUE."
    "Value" of goods is not what they cost their owner; it is what they
    are worth to him or to others.
    [Ed. Note.—For other definitions, see Words and Phrases, First and
    Second Series, Value.]

In Error to the District Court of the United States for the Eastern
District of Pennsylvania; W. H. Seward Thompson, Judge.

Two actions at law by the Agency of Canadian Car & Foundry
Company, Limited, against the Pennsylvania Iron Works Company.
From the judgments, plaintiff brings error.   First judgment affirmed,
and second reversed.

Ralph B. Evans, Robert J. Doads, and Edwin W. Smith, all of
Pittsburgh, Pa. (Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., and

Prichard, Saul, Bayard & Evans, of Philadelphia, Pa., of counsel), for plaintiff in error.

George Wharton Pepper, of Philadelphia, Pa. (Henry, Pepper, Bodine & Pepper, of Philadelphia, Pa., of counsel), for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMSON, District Judge.

WOOLLEY, Circuit Judge. This controversy arose out of war contracts. Canadian Car & Foundry Company, Limited, a corporation of Canada, had a contract with the Imperial Russian government for the manufacture of 2,500,000 shrapnel shells for three-inch quick-firing field guns. Finding it impracticable to turn out shells in this number from its works in Canada, this corporation came to the United States and entered into many subcontracts for finishing shells with concerns having manufacturing plants of diverse kinds. One of these was the Pennsylvania Iron Works Company, a corporation of Pennsylvania, the defendant in error.

This contract between these parties bore date April 20, 1915, and for convenience described Canadian Car & Foundry Company, Limited, as "the Purchaser" and the Pennsylvania Iron Works Company as "the Manufacturer." Pursuant to its terms, stated very generally, the Purchaser undertook to supply the Manufacturer 100,000 shrapnel shell forgings in the rough, together with certain shell parts, and the Manufacturer undertook to supply the remaining parts, such as resin, red lead, asphaltum and lacquer, and to assemble, machine and finish the whole according to patterns and designs having an especial regard to precision in work and accuracy of measurements prescribed by rigid specifications. The work was to be done from templates and be measured by master gauges to be supplied by the Purchaser, conforming with patterns and gauges furnished the Purchaser by the Russian Government; and the work was to be accepted and paid for only after it had passed inspection by both the Purchaser and the Russian Government. The Manufacturer undertook to make deliveries monthly and the Purchaser on acceptance to make payment at the rate of $1.80 a shell.

After entering into the contract, the Manufacturer, which had been previously engaged in the manufacture of steam and gasoline engines and hydraulic machinery, put its plant in suitable condition for the manufacture of shells, and the Purchaser delivered to the Manufacturer large quantities of shell parts.

The work was new to both parties. Disputes arose almost at once, with consequent delays on the part of both in the performance of their respective undertakings, resulting, after the delivery of a small number of completed shells, in a breach of the contract, which each party charged to the other.

As a last phase of these disputes, the Manufacturer in July, 1916, regarded the contract as terminated, stopped work, advertised the shells for sale, and notified the Purchaser of its action.

Subsequently to the making of the contract and pending its perform-

ance, the Purchaser disposed of the shells by bill of sale and assigned the contract to one of its subsidiaries doing business in the United States, known as "Agency of Canadian Car & Foundry Company, Limited," a corporation of New York. This concern, on being informed of the proposed sale and claiming title to the shells under the bill of sale and assignment from the Canadian corporation, brought these two actions of replevin, the first being for shells on which the Manufacturer had done some work or had supplied some material, and the second being for shells on which it had done no work and toward whose completion it had supplied no material. The value of the shells replevied was set at $77,015.81. Agency of Canadian Car & Foundry Company, Limited, the plaintiff in the two actions (to which for convenience we shall also refer as the Purchaser), gave the requisite replevin bonds. The Manufacturer, in order to hold the shells, arranged to give counter bonds, when, owing to exigencies growing out of the war, it was dissuaded from this action by the Purchaser, resulting in a stipulation to which we shall refer presently. The marshal then delivered the shells to the Purchaser and the Purchaser turned them over to another manufacturing concern for completion, after which they disappeared from the case.

The two cases of replevin were tried together, being similar in most aspects though radically different in one. We shall therefore review them together in this opinion, but shall dispose of them separately.

## Number 2361.

[1] The pleadings in this case are elaborate, but as many of the issues have been decided by the verdict, it will be sufficient for the purpose of this review to state, that the Purchaser, the plaintiff, pleaded general property in the shells and a right of possession because of the termination of the contract on a breach which it charged to the Manufacturer. The Manufacturer, the defendant, traversed this allegation, made a counter charge of breach by the Purchaser, and pleaded special property in itself. Property thus pleaded by both parties in replevin put in issue the Purchaser's interest in the shells and imposed on it as plaintiff the burden of proving its right to the immediate and exclusive possession of the whole of them. McIlvaine's Adm'r v. Holland, 5 Har. (Del.) 226, 227; Pritchard's Adm'r v. Culver, 2 Har. (Del.) 129; Hazzard v. Burton, 4 Har. (Del.) 62.

[2] At the trial, the Purchaser proved in support of its claim of title and right of possession that the shells in the rough and certain of their parts were originally its property, that they were delivered to the Manufacturer only to be machined, assembled, and finished, and that, without regard to any special property which the Manufacturer may at one time have acquired in them under the contract, that property had become wholly lost and had passed from the manufacturer to the Purchaser upon the termination of the contract, by force of clause 27, which provided:

"27. Upon the completion or termination of this agreement, by cancellation or otherwise, as the case may be, the Manufacturer shall forthwith deliver, to the order of the Purchaser, all steel shell forgings, component parts or oth-

er material, the property of the Purchaser, which may then remain in the possession of the Manufacturer."

This clause the Purchaser contends is the only clause in the contract which related to the title or the right of possession of the shells on the termination of the agreement by whatever cause, and, as the contract has been terminated by the breach of one party or the other, the Purchaser contends further that its right of possession of the shells, in which admittedly it had a general property, was established. Obviously, this position would be sound were clause 27 the only clause in the contract governing the right of possession. But the contract contained other clauses which under certain conditions gave a special property in the shells to the Manufacturer and awarded it temporarily an absolute right of possession. With reference to the Manufacturer's property the contract provided as follows:

"1. That in this agreement that word 'work' shall, except where by the context another meaning is clearly indicated, mean the whole of the material, labor and other things required to be supplied, done, finished and performed by the Manufacturer under this agreement."

On all shells replevied by this writ, the defendant had done some "work" by performing some labor and supplying some material. In addition to its absolute property in the material which it had itself supplied, as resin, red lead, etc., the contract gave the Manufacturer a special property in the shells (notwithstanding the Purchaser's general property) the instant it began "work" on them. The *character* of this special property was determined by the "work" done on the shells, as defined by clause 1, and its *duration* was determined by two other clauses of the contract. The first is:

"5. That all work performed by the Manufacturer hereunder, and accepted by or on behalf of the Purchaser, shall be deemed to be the property of, and shall be delivered to the order of, the Purchaser."

As the shells in dispute had not been accepted by or on behalf of the Purchaser, this clause is not pertinent to the controversy except for its implication that the "work" performed by the Manufacturer on the shells, that is, its special property in them, was intended to continue until they had been accepted.

The other clause reads as follows:

"17. When the inspectors find the work completed in accordance with the specifications, they shall issue certificates in writing accepting the same; and it is agreed that the *property in the work shall not pass from the Manufacturer to the Purchaser until after the same shall have been inspected and accepted by the inspectors*, notwithstanding that there may be any delay in making the inspections, or that any part or the whole of the purchase price of the work shall have been already paid to the Manufacturer."

From these several clauses of the contract it appears that each party had a property in the shells, one a general and the other a special property. They were not joint properties, where each drew to itself the same right of possession, thereby precluding an action of replevin by one joint owner against the other. Pritchard's Adm'r v. Culver, 2 Har. (Del.) 129, 130; Fell v. Taylor, 2 Pennewill (Del.) 372, 45 Atl. 716. They were several properties of different kinds, running for dif-

ferent periods, which drew to the holder of one or the other the right of possession only according to the terms of the contract by which the properties were established and defined. There being two properties in the shells, not inconsistent one with the other because the two owners never had a right of possession at the same time, we think the learned trial judge committed no error in construing the contract to mean that the parties, fully recognizing that the shells had been and were again to come into the possession of the Purchaser by reason of its general property in them, intended, nevertheless, that the Manufacturer by reason of its special "property" should hold the shells exclusively in its possession as security for its investment of labor and material until they were inspected and accepted. Nor do we think the trial judge erred in holding that clause 17 of the contract, which preserved to the manufacturer a special property in the shells on which it had done work until inspection and acceptance, is not inconsistent with clause 27, which provided for the delivery by the Manufacturer of "the property of the Purchaser" on the termination of the contract. Manifestly, "the property of the Purchaser" as expressed in the latter clause meant those shells on which the Manufacturer had done no work, and therefore shells in which the Purchaser had a property and the Manufacturer had none. No shells of this kind are involved in this action of replevin. Only shells in which the Manufacturer had done some work are here in suit.

[3] Under this interpretation of the contract, we are of opinion that the learned trial judge properly instructed the jury that the Manufacturer had a property in the work it had done on the shells and that it could not be deprived of this property except by the Purchaser's acceptance or by the Manufacturer's own default. He therefore submitted the main issue as to whether the contract had been terminated, and if so, whether by the breach of the Purchaser or the Manufacturer. Finding that the contract had been terminated by the breach of the Purchaser, the jury returned the following verdict:

"As to case No. 4256, the jury rendered a verdict in favor of the defendant for $52,922.86; the special machinery and appliances to remain the property of the defendant."

The Purchaser, the plaintiff below, sued out this writ of error. It does not, of course, assign as error the finding by the jury that the contract had been terminated by its breach, but conceding this, as it must, it specifies error in the admission of testimony and in the form of the judgment. We shall address our discussion first to the form of the judgment, for if infirmity be found here, other errors, if committed in the trial, cease to be of importance.

The Purchaser contends very correctly that the verdict must be rendered and judgment be entered under the Act of April 19, 1901, Statutes of Pennsylvania, P. L. 88, entitled "An Act relating to replevin, and regulating the practice in cases where the writ of replevin is issued." The applicable provision of this statute reads as follows:

"7. If the title to said goods and chattels be found finally to be in a party *who has not been given possession of the same*, in said proceeding, the jury shall determine the *value* thereof *to the successful party*, and he may, at his option, issue a writ in the nature of a writ of retorno habendo, requiring the

delivery thereof to him, with an added clause of fieri facias as to the damages awarded and costs; and upon failure so to recover them, or in the first instance, he may issue execution for the value thereof, and the damages awarded and cost; or he may sue, in the first instance, upon the bond given, and recover thereon the *value* of the goods and chattels, *damages and costs*, in the same manner that recovery is had upon other official bonds."

Acquitting ourselves of any intention of construing this state statute beyond its application to the case in hand, we may say that what the quoted provision seems to do is to enlarge the common law process of execution in replevin by awarding a writ of retorno habendo, not alone in a case where goods have been replevied and judgment is for the defendant, as at common law, but in any case to the successful party—whether defendant or plaintiff—who is not in possession of the goods, against the unsuccessful party—whether plaintiff or defendant—who is in possession of the same. But it is not necessary for us to construe the statute thus far, because the goods having been replevied by the plaintiff and the judgment being for the defendant, it is just such a judgment as could be rendered at common law, to enforce which the common law writ of retorno habendo or fieri facias is, according to the character of the verdict, appropriate.

[7] The verdict being in part for a sum of money without words indicating for what it was awarded, whether "damages" or the "value" of the chattels replevied, the Purchaser attacks the judgment entered on the verdict as invalid, because, if for damages, the only "damages" contemplated by the Pennsylvania statute, as it contends, are damages for the caption and detention, and if for the "value" of the property taken, as allowed by the Pennsylvania statute, the verdict fails to disclose a finding of that kind.

If section 7 of the Pennsylvania statute provides in a case like this a procedure in any way different from that at common law, there might be merit in this contention; but the quoted section of the Pennsylvania statute, so far as it is applicable to a case where goods have been replevied and verdict is for the defendant, is but declaratory of the common law. At common law, judgments of several kinds may be entered for the defendant according to which party has possession of the goods at the time of trial and whether they can be reached and returned by a writ of retorno habendo. These different judgments at common law are very clearly defined in the case of Clark v. Adair, 3 Har. (Del.) 113, an early decision by the courts of Delaware, a jurisdiction that adheres more closely to common law practice and procedure as they were before the Hilary Rules and Procedure Acts than any other jurisdiction. In this case the court said:

"The judgment for the *defendant* depends on the pleadings and verdict. * * * Under the plea of property, the defendant, if it be found for him, is entitled to judgment for the return of the property (pro retorno habendo) and damages for the taking upon the writ. 1 Salk. 93, Butcher v. Porter, s. c., Vin. 249; 5 Mass. Rep. 343, Powell v. Hinsdale; 5 Serg. & Rawle, 135, Easton v. Worthington. But that is not the only common-law judgment, for it is expressly laid down by Lord Chief Justice Hale in his commentary on Fitzherbert's Natura Brevium, that 'if defendant claims property, or says that he did not take, etc., if in the meantime the beasts die or are sold, *so that he cannot have a return*, he may recover all in damages if it be found for him;' and cites Year Book 7, h. 4, 18; Fitz. N. B. 159, note c.

"The property for which the writ was brought in this case is ninety-eight and a half bushels of corn, which is a perishable article, and which ipso usu consumitur; and, upon proof made at the trial that the corn had perished· or been consumed, the jury might well give a verdict for *damages, embracing the value of the corn,* of which in such case *the defendant could have no return,* for that is the principle of the rule as laid down by Lord Hale. As, therefore, the verdict in this case was given for the value of the corn, it must be intended that proof was made at the trial, that the corn had perished or been consumed, and then the verdict is well enough; and the judgment must follow the nature of the verdict, and cannot be pro retorno habendo."

Followed later by the case of Davis v. White, Sheriff, 1 Houst. (Del.) 228.

In providing in the alternative several processes for redress by the successful party, section 7 of the Pennsylvania Act provides at least what the common law provided, when the verdict was for the defendant, namely: a process for the return of the goods when they can be reached and their return be enforced, together with a fieri facias clause for damages if any have been awarded for the caption and detention of the goods (one form of damages at common law): and also, for damages for their caption and detention, if any be awarded; and finally, suit on the bond for the value of the goods (a form of damages at common law), damages for the caption and costs.

Admittedly, the verdict in this case is somewhat unusual in form, being made up of two distinct parts dealing with two subject matters. One part, which is for money, means something. Evidently this money part is for some loss the defendant had sustained by the replevy of its chattels. The award cannot be said to be for damages for caption and detention for there is no evidence of such damage except as is always implied in such a verdict. The verdict awarding a sum of money must be presumed to be based on evidence, and it is valid if evidence can be found to sustain it. There is in the case such evidence, and this evidence is for damages which the defendant suffered in having its chattels replevied, not those incident to the caption and detention such as deterioration, but damages which were sustained by the defendant in having its chattels taken from it and so dispersed that they could not be restored to it. This is one species of damages recoverable at common law, and this is the same species recoverable under section 7 of the Pennsylvania statute on a finding of "value" of the property taken and not returned. It is unimportant that the finding be shown in words to be the value of the chattels if the evidence shows that fact. As the evidence amply sustains such a finding, the verdict is valid equally at common law and under section 7 of the Pennsylvania Act.

So far, the form of the judgment is without fault. In the other part of the verdict, there is the expression "special machinery and appliances to remain the property of the defendant." These chattels belonged to the defendant and title to them never was in dispute. They came into the case only as a claimed ingredient of damage. As we regard this concluding expression of the verdict, it was nothing more than redundance. All that it did was to show the very practical way in which the jury disposed of the element of damage which the defendant had claimed for money expended in the equipment of its plant for the finishing of shells under the contract. We find no error here.

[4] The next question is, whether the theory of the court on which it admitted evidence in proof of the value of the shells was proper.

The jury having determined by their verdict that the title to, or property in the "work," was in the Manufacturer, that is (in the language of the Pennsylvania statute), "in the party who has not been given possession of the same," they were permitted by the court to find the "value" of the property on evidence which the Purchaser now asserts was improper. This evidence showed the items by which the defendant computed value. Speaking in round numbers these items embraced labor and material, $53,000.00; special machinery and appliances (which as appears by the verdict, the jury did not assess against the Purchaser as damages but left with the Manufacturer as its own property), $7,000.00; proportion of overhead charges, $35,-000.00; total cost expenditures, $96,000.00; and finally *a reasonable manufacturer's profit* in addition to cost; less a credit on the whole of $18,000.00.

No exception to the court's action admitting cost items is very seriously urged. The principal exception goes to the admission of evidence of the manufacturer's profit on the shells in their unfinished condition when taken from the Manufacturer on the Purchaser's writs of replevin. At the trial, the Manufacturer made an offer to prove "what were the disbursements necessarily made by the defendant in the course of the performance of the contract, and what under the circumstances was *a reasonable profit margin on the manufacturer's work*, this for the *purpose of establishing the value* to the defendant *at the time of the taking* of the defendant's property in the goods seized." On this offer the court ruled that the Manufacturer was entitled to a profit and permitted it to prove that such work normally is done on a basis of cost plus a profit and that the ordinary profit for such work is a given percentage on the proven cost. On this tender there seems both here and below to have been some confusion with reference to the precise object of the court's ruling, the suggestion being that the Manufacturer was allowed to recover in this action of replevin damages in the nature of profits which it would have made on the contract had the contract not been terminated by the breach of the Purchaser, profits of this character being of course recoverable only in an action of assumpsit. We do not find this to be either the purpose or the effect of the court's ruling. On the contrary, the court admitted testimony to prove what was a manufacturer's profit on the shells in their unfinished condition *at the time they were replevied*, not the profit which would have been made on the contract, if completed, raising squarely the question, whether the "value" of the shells to the Manufacturer at that time included a profit item in addition to items of cost.

We are of opinion that the court made no mistake in this ruling. The Purchaser admits the Manufacturer is entitled to a profit on the work it had done at the time it was stopped, if the work showed a profit instead of a loss. But the Purchaser maintains further that cost alone is the measure of the value of the goods replevied and that the manufacturer's profit on the work done to which it concedes the owner

of the goods is entitled cannot be recovered in replevin but only in assumpsit. This is correct if profit is not an element of "value."

Value of goods is not what they cost their owner; it is what they are worth to him or to others. This is as true of shells as it is of corn. Clark v. Adair, supra. If the property replevied had been corn instead of shells, we do not think the owner would have been compelled to separate profit from cost and show the value of his corn by proving what it had cost him to raise it; nor do we think the court would have limited his recovery to the cost of planting, tilling and harvesting. The value of corn is its market value, and this may include profit as well as cost.

Being entitled to a profit and being entitled also to have that profit included as an element in the value of the shells, the only question with which we have had difficulty is, whether profit on the shells, considered with reference to their peculiar character, must be withheld from the Manufacturer because of the impossibility of proving it or whether it is capable of proof by some proper evidence. Ordinarily the measure of damages in replevin for the value of the property replevied is its market value, if it has a market value. This, as we have said, is as true of shells as it is of corn. Considering the varying requirements of different belligerent nations with reference to types and dimensions of shells, it is doubtful whether there was a market even for finished shells. Certainly there was no market for unfinished shells; and such shells consequently had no market value. But "the fact that property has no market value does not restrict the recovery to nominal damages only, but its value or the (defendant's) damages must be ascertained in some other rational way and from such elements as are attainable." 8 R. C. L. 488. Another rational way was contained in the Manufacturer's offer of proof and was based upon elements attainable in other shops, where war products were manufactured. In these shops, profits were measured, not by market values which did not exist, but by values which arose from the novelty and difficulty of the work and the unusual conditions under which it was done. Profits may reasonably be supposed to have been within the contemplation of the parties when they made the contract, and a profit on the manufacturer's work at the stage at which the work was stopped, as distinguished from the contract profit, we regard as a proper element of its "value," provable in a case like this on a cost plus basis.

[5] When in July, 1916, the Manufacturer stopped work under the contract because of conduct on the part of the Purchaser which the Manufacturer then thought and the jury have since found made performance on its part impossible, it advertised the shells for sale and notified the Purchaser of its purpose to sell them (using its own language) "to enforce a lien which we have on your material at our plant." On receiving this notice the Purchaser instituted these actions of replevin. At the trial, the Manufacturer did not assert a lien, but stood on its plea of property alone. The Purchaser, maintaining that the Manufacturer's previous claim of a lien was an admission by it that property in the shells was in the Purchaser, presented the following point to the court:

"Third. That under the evidence in the case, particularly the letters from the defendant to the plaintiff, dated July 26 and 27, 1915, the advertisement in the Chester Times, the notice of sale, the defendant is estopped from asserting any claim of property, right or interest in the material described by the writ, and has waived its right to make any such claim, and the verdict must be for the plaintiff."

The court's refusal of the point is assigned as error.

We find in the Manufacturer's claim of lien before trial nothing that estopped it asserting its property right at trial. While it was a claim of a legal right which the Manufacturer did not have, it does not appear to have been made for the purpose or with the effect of inducing the Purchaser, in reliance upon it, to part with any advantage or causing it to suffer any prejudice. Both parties later stood just where they stood before. The statement was nothing more than a misconception by the Manufacturer of its legal remedy and involved none of the elements of estoppel.

The only other assignment of error which we shall discuss is the court's refusal to allow the Purchaser to prove counter damages because of the Manufacturer's alleged defective workmanship on the shells. This assignment arose on a stipulation between the parties entered into after the shells had been replevied and while the Manufacturer was arranging to hold them by giving counter bond. On abandoning this course, the Manufacturer obtained an admission by the Purchaser in a stipulation in the words following:

"And now, August 11, 1916, it is stipulated that the time for filing a claim property bond be extended for two weeks but that plaintiff shall be at liberty to remove within one week such of the material replevied as it admits for *all the purposes of this case to be not defective* under the terms of the contract between the Canadian Car & Foundry Company, Limited, and The Pennsylvania Iron Works Company."

Having obtained a release of the shells from the Manufacturer's proposed counter bond only by admitting that they were not defective, it cannot seriously be urged that the court erred in refusing to allow the Purchaser to avoid the effect of its admission and to profit by denying it.

Another position taken by the Purchaser with respect to this stipulation is, that when the defendant agreed that the plaintiff should take away the shells, it waived its right to plead property in this action and permitted itself to be relegated to an action on the contract against the Purchaser wherever it might be found. We discover no substance in either of these positions.

Finding no error in the trial of this case, we direct that the judgment below be affirmed.

## Number 2362.

[6] This action of replevin was for shells on which the Manufacturer had done no work. Property in the shells admittedly was in the Purchaser and no property was pleaded by the Manufacturer. It had done no work on the shells, and therefore, by the definition of clause 1 of the contract, it had acquired no property in them. The Manufacturer, however, claimed the right to the immediate and exclusive

possession of the shells, not because of a property interest but under a lien against them, which, if such existed, could be enforced in an action of replevin by virtue of section 6 of the Pennsylvania statute (Act of April 19, 1901, P. L. 88), in which it is provided, that if, on the trial of title and right of possession of goods and chattels "any party be found to have only a lien upon said goods and chattels, a conditional verdict may be entered, which the court shall enforce in accordance with equitable principles."

The facts on which the Manufacturer based its claimed lien are these: When the breach in the contract occurred, the Manufacturer notified the Purchaser that unless it promptly removed the shells, it would charge for the expense of retaining them on its premises, involving costs of storage, watchman, insurance, etc. The shells remained with the Manufacturer until they were replevied. At the trial the Manufacturer claimed and was allowed to prove a lien for storage, etc., and the jury found a verdict for the *plaintiff* "upon the condition of paying the defendant the sum of $375.00."

The right of the Manufacturer to enforce its lien as a condition to recovery by the Purchaser, depended, of course, upon the Manufacturer having such a lien. The trial judge very properly ruled that such a lien could exist only by reason of a contract either express or implied. Concededly, it did not arise from the written contract between the parties. We find in the case no evidence of any other express contract. If it arose from contract at all, it must have arisen from an implied contract. While the law might perhaps imply a contract between the parties, making the Purchaser liable to the Manufacturer for moneys expended in and about its business, we know of no such implied contract that raises an implied lien. The lien claimed in this case admittedly was not given by any statute of Pennsylvania, nor by any rule of the common law with which we are familiar. In fact, no case has been cited and no principle has been invoked in support of the lien which the Manufacturer asserted and the jury found.

In this we think there was error, and direct that the judgment below be reversed.