[1] This case came to the Circuit Court of Dent County by appeal from an order of the Welfare Division of the State Department of Public Health and Welfare, refusing to allow appellant old age assistance. The circuit court sustained the order, overruled applicant's motion for new trial, and granted her an appeal to this Court.
[2] It seems that applicant, appellant here, had been the recipient of old age assistance for several years before. Such old age assistance was stopped by the commission, and applicant claimed that she was still entitled to such assistance.
[3] An appeal may be taken by the person applying for such assistance to the circuit court of the county where the applicant resides. Upon dissatisfaction with the ruling of the circuit court, the applicant may take an appeal to the appropriate appellate court. Section 9411, R.S.Mo. 1939, Mo.R.S.A.; Laws of 1941, p. 334, Mo.R.S.A. § 2044.1.
[4] No question is raised in this record about the prior eligibility of applicant, under Section 9406, R.S.Mo. 1939, Mo.R.S.A. But to understand fully Section 9406, R.S.Mo. 1939, Mo.R.S.A., it is necessary to reproduce in this opinion the first paragraph of Section 9406, which is as follows: "In determining the eligibility of an applicant for public assistance under this law, it shall be the duty of the Commission to consider and take into account all facts and circumstances surrounding the applicant, including his earning capacity, income and resources, from whatever source received, and if from all the facts and circumstances the applicant is not found to be in need, assistance shall be denied. The amount of benefits when added to all other income, resources, support and maintenance shall provide such persons with reasonable subsistence compatible with decency and health. Benefits shall not be payable to any person who:".
[5] Subsection (4) of said section is as follows: "(4) is married and actually living with husband or wife, if the value of his or her property, or the value of his or her interest in property together with that of such husband or wife exceeds $2,000.00;".
[6] That subsection was not affected by the amendment of 1943, in Laws of Missouri for that year, page 950.
[7] The first contention of appellant is that the word "value" in such subsection means the cost to her of the lot and house erected thereon at the time such house was built. On the other hand, respondent contends that such word "value," as used in the statute, means the amount such property would have commanded, if put on the market and sold at the time the order of the commission was made.
[8] Respondent contends that the legislative meaning of such word "value" is shown by the action of the 63rd General Assembly in providing that said Section 9406 should be amended by increasing the amount a husband and wife could claim, under subsection (4), to $3000, instead of $2000. Laws of Missouri for 1945, page 1731, Mo.R.S.A. § 9406-a. The Legislature then made the following provision: "The provisions of this Act shall terminate and cease to be effective on June 30, 1949."
[9] Respondent also contends that the 65th General Assembly, by H. B. No. 388, further amended said Section 9406-a by extending the time provided therein to June 30, 1951.
[10] It is the contention of respondent that the Legislature thought that the high prices of that period would cease and that such prices would return to normal by June 30, 1951. This contention is sustained by the following quotation from respondent's brief: "Respondent contends that the sole and only reason for increasing the amount of property a person may own or possess and still qualify for benefits under the Act, was due to the fact that property has increased in value to such an extent in recent years that it became difficult for many persons to *Page 852 
qualify for benefits under the State Social Security Act and own or possess even a very small and inexpensive home."
[11] In other words, respondent contends that the amount the property would bring when the order was made, and not the original cost of the property, determines the "value" of the property which applicant can have in order to be entitled to old age assistance.
[12] There is not the slightest doubt under the record that the original cost of applicant's property was considerably under $3000; nor is there any question but that such property would have sold on the market for more than $3000, had it been sold at current prices at the time respondent cut off applicant's old age assistance. So the meaning of the word "value" as used in Sections 9406 and 9406-a is practically decisive in this case.
[13] Appellant cites Galvin v. State Social Security Commission of Missouri, Mo.App., 129 S.W.2d 1051, loc. cit. 1053. Nowhere does that case attempt to deal with the subject of "value." There appellant was removed from the rolls of old age assistance through error. The circuit court ordered the commission to restore her to the rolls and the Kansas City Court of Appeals sustained the trial court.
[14] The only possible bearing that case might have on this case were the following words: "In construing the act `we should consider the former state of the law, the new provision, the evil sought to be removed, as well as the remedy provided, and so construe the law as to further the remedy and retard the evil. Such is a venerable rule of construction, none the less alive because old.'"
[15] Appellant then cites us to the word "value" in Volume 44 of Words and Phrases, Perm.Ed., especially to pages 42, 43, 47 and 70 thereof. On page 41 of that volume, we find the following:
[16] "In action to recover chattel, `value' means value at time of trial, not at time of seizure thereof, and admission of evidence of value of automobile at time of seizure was error, in action for recovery thereof. Civil Practice Act, § 1120. Spear v. Auto Dealers' Discount Corporation, Sup., 278 N.Y.S. 561, 154 Misc. 801." And also on the same page, it is said: "`Value' of goods is not what they cost their owners; it is what they are worth to him or to others. Agency of Canadian Car Foundry Co. v. Pennsylvania Iron Works Co. [3 Cir.], C.C.A.Pa. 256 F. 339, 334."
[17] While the case cited in the last quotation does not hold in plain words that the word "damages" in a replevin suit means "value," when the replevined property cannot be returned, the case apparently so holds.
[18] The case of Heyward v. Bradley, 4 Cir., 179 F. 325, 331, 102 C.C.A. 509, cited as a part of page 42, Vol. 44 of Words and Phrases, Perm.Ed., was a specific performance case and the contract was held unenforceable, because the "value" named in the contract was wholly inadequate at the time the contract was made. That case throws no light on the proposition here involved.
[19] Appellant cites page 43, Vol. 44, Words and Phrases, Perm.Ed., and calls our attention to the case of Town of Rochester v. Town of Chester, 3 N.H. 349, 358.
[20] The quotation from page 43 of said volume, at local citation 358, of the case there cited, [3 N.H.] is part of what counsel said in his brief, and was not a part of what the court said in passing on the case. However, we have carefully examined the case and cannot see where, even counsel made a definition of "value." It had nothing to do with the meaning of that word as used in Section 9406 of our statute.
[21] The case of Read v. Rahm, 65 Cal. 343, 4 P. 111, 112, cited by appellant, simply discussed the difference between the words "value" and "cash value." The court there said: "The `value' of a tract of land is its true and absolute value. The value is its actual existing value, as opposed to its potential or possible value."
[22] The meaning of the word "value" was not there involved, as here. The citation to page 70, Vol. 44, Words and Phrases, Perm. Ed., simply makes a distinction between the words "use value" and "market value." The case cited from that volume is Harman v. Defatta, 182 La. 463, 162 So. 44, 48, has also been examined by us. That was a fraudulent conveyance case. However, Odom, Justice, said: "In determining *Page 853 
whether one is solvent at a given time, the value of his property a year or five years before or under normal conditions cannot be considered. It is present value or value at the time which governs."
[23] Now turning to the Pocket Parts of Vol. 44, Words and Phrases, Perm.Ed., we find that the word "value" has been held to be "market value."
[24] The second contention of appellant is that there was no substantial evidence upon which the commission could have based its decision that appellant was ineligible, under the statute. Appellant cites the cases of McHargue v. State Social Security Commission, 233 Mo.App. 776, 127 S.W.2d 77, and Foster v. State Social Security Commission, Mo.App., 187 S.W.2d 870, loc. cit. 872. True, both of those cases held that the commission could only act under competent evidence; but we feel that there was abundant evidence in this case to support the order of the commission, and that those cases do not help appellant in any way.
[25] The third assignment of appellant is that she was not accorded a fair hearing in the trial court, because the referee, who conducted the first hearing before respondent, was allowed by the court to appear as counsel for respondent when the case came to the circuit court. No error can be charged against the circuit court on account of anything that did not take place in that court. All that was done in the circuit court was to offer therein the evidence heard by counsel for respondent, when the case was before him as referee, and later, when that same evidence was before the commission itself. We are unable to understand how any point can be made by appellant in regard to what took place before the referee or the commission itself, and appellant has not pointed out how the circuit court could possibly have been affected thereby and has not indicated to us any error of the trial court in that record.
[26] It was not errors of the referee or the commission that are at issue in this case, but what were the errors, if any, of the trial court. There is no showing that any adequate objection was made in the trial court to the appearance therein of the referee, and we cannot convict the trial court of error for something it did not rule on.
[27] Appellant also cites Supreme Court Rule No. 4.06. That rule might be of some significance, if appellant had timely raised, in the trial court, the objection she later made in her motion for a new trial, if such objection was not then too late, when all the trial court had to do was to pass on the evidence before the commission.
[28] In her brief appellant cites Section 6, Article V, of the Missouri Constitution, Mo. R.S.A., evidently the Constitution adopted by the people of Missouri on February 27, 1945. Section 6 deals with the authority of the Supreme Court of Missouri to assign judges, and does not deal with any commission.
[29] Respondent suggests that appellant may have meant to cite Section 5 of Article V, of that Constitution; but that section does not help appellant at all. It deals only with the power of the Supreme Court to make rules of practice and procedure, and does not affect the power of any commission.
[30] We do not think it at all necessary to refer to the many court decisions cited by respondent. We are satisfied that appellant had a fair and impartial hearing before the commission and that no sufficient objection can be made to the holding of the commission, that the word "value" means "market value" at that time, and not the cost to appellant before that time. Its finding was well supported by the evidence. The trial court properly held that the finding of the commission was based on substantial evidence, and we cannot disagree with the trial court in that respect.
[31] The judgment of the circuit court must be affirmed.
[32] It is so ordered.
[33] VANDEVENTER, P. J., and McDOWELL, J., concur. *Page 854